# A. G. ALDEN

*vs.*

# JOHN W. HINTON.

1. The Commissioners of Election are liable in damages to the aggrieved party if they refuse or suspend his vote on a mere vague and capricious challenge unsupported by reasonable proof; yet if such challenge be suppported by evidence sufficient to engender an honest doubt in the minds of the commissioners, it would be the duty of the person tendering his vote to relieve that doubt by his own oath and such other proof as he could reasonably obtain.
2. The registry of the party's name and proof of his having paid the requisite taxes are not conclusive of his right to vote, but the commissioners may lawfully go behind the registry and tax receipt, and inquire as to his citizenship and residence if they honestly doubt either of these.
3. Judicial discretion is the option which a judge may exercise between the doing and not doing a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done.

Law No. 1,699.   Decided June 1, 1867.

MOTION for a new trial on exceptions taken to the rulings of the Court in an action on the case to recover damages, because of the defendants refusal, as Commissioners of Election, to receive his vote.

THE FACTS are stated in the opinion.

MR. A. G. RIDDLE for plaintiff:

The Court having charged that registration and payment of school-tax made a *prima facie* right to vote, requiring a challenge to be supported by proper showing to defeat that right, and the challenger failing to make any showing in support of his challenge, the Court erred in saying the defendants could exercise any discretion to reject the plaintiff's vote.

*28*

The defendants had no discretion in the premises, and to reject the plaintiff's vote was wrongful, for which the action could be maintained, and that it was error to instruct the jury that the plaintiff must prove actual malice to enable him to sustain his action. That should only be considered in estimating the damages.

Laws referred to: Sections 5 and 6 of the act of May 13, 1820, 3 Stats., 583; sections 3, 4 and 5 of act of May 17, 1848, 9 Stats., 223; section 11 act of May 30, 1849; Corp. Laws, 39; act of October 17, 1850.

MR. JOSEPH H. BRADLEY, for defendants:

This case comes up on exceptions to the ruling of the Court below, which are fully stated in the record and cannot be very well abbreviated.

As to the first point made by plaintiffs in error, the defendants say:

First. The list furnished to the commissioners of election cannot be conclusive proof.

1. It does not show how long the parties have lived in the city or in the ward, or that they are citizens of the United States, or whether they are lunatics, or persons under other disabilities to vote, yet chargeable with taxes.

2. That the commissioners are necessarily, by virtue of their office, charged with the duty to pass on these questions.

And as to the second and third grounds assigned as error, they say the commissioners, being charged with the duty to receive the votes, and to decide the question of the right of the party claiming to vote, they cannot be made responsible for any error of judgment in discharging that duty; and no action will lie in such case unless the party charged has acted therein wilfully, maliciously, or corruptly, to the injury of the party complaining.

The case of Dinsman *vs.* Wilkes, 7 Howard, 129 to 133, and the authorities there cited are supposed to have settled the law on this subject.

MR. JUSTICE FISHER delivered the opinion of the Court:

In this case the plaintiff brought suit against the defendants to recover damages for their refusal as commissioners of election, holding the election for the first precinct of the seventh ward of this city on the fifth day of June, 1865, to receive his vote. It was proven on the trial, by both parties, that the defendant acted in the capacity of commissioners at said election, that the plaintiff offered his vote and that the same was refused by the defendants. It was proven by the plaintiff at the trial that his name stood at the head of the list of registered voters for said precinct; that he was a free white citizen of the United States, born in the State of New Hampshire, and had resided in the city of Washington for some fourteen years with the exception of some two or three years during which he was absent from the city and had regularly exercised while residing here his elective franchise. It was also shown by the plaintiff at the trial that he had paid all the taxes required to be paid by him under the law and that he had, in fact, all the qualifications of a legal voter in the ward and precint in which he offered to cast his vote. No countervailing proof of disqualification was tendered by the defendants at the trial. It was also proven by both sides that upon offering his ticket, the plaintiff's right to vote was challenged by a by-stander who alleged that he believed that the plaintiff was an Englishman and not naturalized. The only material facts which were at all controverted between the parties at the trial, were, first, as to whether the plaintiff on his vote being challenged for want of citizenship, was willing to take an oath that he was a citizen of the United States, or to furnish other proof of his citizenship in order to satisfy the commissioners upon that point, and second, as to the custom or usage of the commissioners of election in requiring proof of citizenship from parties whose names appeared upon the list of voters and who exhibited evidence of having paid the requisite taxes to enable them to vote when

their ballots were challenged. Upon these points the evidence adduced at the trial was conflicting, the plaintiff showing by his proofs that in other cases similar to his own during said election, two persons whose votes were challenged were permitted to deposit their ballots without any regard to said challenge or the production of any evidence of their right to vote other than such as was presented by himself in support of his right; he also gave in evidence at the trial that he proffered to the commissioners to make affidavits of his nativity, or to produce the affidavit of a respectable citizen who had known him for many years as a resident of Washington; that said citizen had so known him and believed him to be a native born citizen of the United States, and that said commissioners would not agree to receive such testimony. On the other hand, the defendants proved that the commissioners were willing and offered to receive the plaintiff's own affidavit of his citizenship, but that the plaintiff refused to make it. The case being thus presented to the jury on either side, the plaintiff prayed the Court to instruct the jury as follows: 1st, that if they should find that at the election mentioned in the declaration the name of the plaintiff appeared on the pole list of the voters of said precinct and ward, and that when he offered his vote to the defendant's commissioners of said election, he also produced the required proof in due form of his having paid a school tax and personal tax for the year last preceding, he was then entitled to have his said vote received, and said commissioners had no discretion to reject the same. 2d, that if the jury find that at the time when the plaintiff offered his said vote to the defendant's commissioners of election, his name was contained on the list of the qualified voters furnished to said precinct and ward by the register of the City of Washington then before said commissioners, and that he also produced the usual legal proof of his having paid the school tax and personal tax for the year preceding, he was entitled

to have had his vote received by the defendants, unless his right to vote had been challenged, on a sufficient ground, showing his incompetency to vote, and unless said ground of objection was made to appear by reasonable evidence. The first of these prayers was refused by the Court below, and to that refusal the plaintiff excepted: the second was granted and to that the defendants excepted. The judge below, in his general charge to the jury, among other things, instructed them as follows: " The action here is brought against officers, exercising necessarily more or less discretion in the discharge of their duties. There is an appeal under some circumstances to the exercise of this discretion and they are often called upon to deliver judgment under debatable facts; and I here say to you that the law in this case and in all other cases is, that when an officer is charged with deliberative and discretionary judgment and he is called upon to account for the manner in which he has exercised that judgment, his error of judgment, honestly made does not charge him with liability; the law fixes his responsibility upon altogether a different rule. The law does not contemplate in any officer, immaculate judgment; such does not belong to human nature. Erring judgment is contemplated in the theory of the law and from the necessity of our condition as imperfect beings. All that the law exacts of him in this respect, is that he shall exercise his judgment to the best of his ability and with honesty of purpose. This is the duty enforced by the law. It is contended in this case in behalf of the plaintiff, that the defendants did not do it and on behalf of the defendants, that they did do it. The law of that issue is this: if you find the proof that the defendants exercised their discretionary power over the ballot box on the occasion of that election, with honest purpose and with a view to do justice to the electors of that precinct, they are not chargeable and are entitled to your verdict of acquittal. If, on the other hand, you find from the testimony, that they exercised their discretionary duty in this

behalf, reckless of the rights of the elector and with a purpose to promote the success of one party at the expense of another, and at the still further expense of an honest and upright discharge of their duty, you will find them liable." To which portion of the charge, the plaintiff also excepted.

It is doubtless true as matter of law, that the existence of the plaintiff's name upon the registered list of voters for the precinct where he tendered his vote, together with satisfactory proof of his having paid the school and personal tax assessed against him for the preceding year, was *prima facie* evidence of his qualification and of his right to have his vote received and counted at the election; but it was not conclusive proof.

Under the law of this District, as it then existed, the commissioners of election were not only charged with the duty of receiving votes (when satisfied of the identity of the person offering to vote) and depositing the tickets in the ballot box and at the close of the election ascertaining the state of the vote and certifying the same, as is now the duty of the commissioners of election under the present law, but the further duty was devolved on them to ascertain whether each and every person whose name stood upon the list of voters was entitled to the elective franchise. In absence of proof to the contrary, the party offering his vote and showing the payment of the necessary taxes was presumed to be a qualified voter. The mass of persons whose names are set down upon the list of voters were born in the United States. They are all presumed to be native born until the contrary shall be made satisfactorily to appear; but if a party, presenting himself at the polls, should be challenged because of a foreign accent upon his tongue, or other proof should be adduced showing a strong probability of his foreign birth, it would then be plainly his duty to offer evidence of his citizenship, either by nativity or by naturalization, and that evidence should be the best of which the nature of the case will admit. His own oath of such citizenship would certainly

not be a hard requirement. Whilst we hold that it would be culpable to refuse or suspend his vote upon a mere vague and capricious challenge unsupported by reasonable proof, yet if such challenge be supported by evidence sufficient to engender an honest doubt in the minds of the commissioners, it would be the duty of the person tendering his vote to relieve that doubt by his own oath and such other proof as he could reasonably obtain. Believing, therefore, that the registry of the plaintiff's name and proof of his having paid the requisite taxes are not conclusive of his right to vote, but that the commissioners might lawfully go behind the registry and tax receipt, and inquire as to his citizenship and residence, if they honestly doubted either of these, we do not think that the Court below erred in rejecting the first prayer presented by the plaintiff's counsel.

The exception taken to the granting of the plaintiff's second prayer, by the Court below, having been waived by the defendant, it is unnecessary for us to say more concerning it than simply to remark that the ruling was correct.

If our reasoning be correct in regard to the first exception taken to the ruling of the Court below by the plaintiff, it necessarily follows that the exception taken by the plaintiff to the charge of the Court on giving the case to the jury is also not well founded. It is true that in the charge a mere verbal error may have occurred in the use of the words " discretion " and " discretionary power." By these terms is meant the option which a judge may exercise either to do or not to do that which is proposed to him that he shall do ; and the exercise of option on his part will work no wrong or injustice to anybody. To exercise discretion is to choose between the doing and not doing a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done. The proposition for the exercise of judicial discretion is always based upon a given state of facts and addresses itself to the favor of the judge. It is not based upon the right of the party

seeking to have the thing done founded in the law applicable to the facts involved, but is always an appeal *ex gratia.* It is true in this case that if the plaintiff when offering his vote at the election in 1865 had made it satisfactorily to appear that he possessed all the qualifications of a legal voter, then the commissioners of election could exercise no discretionary power whatever. It would have been in that case, the duty of the commissioners to have obeyed the peremptory mandate of the law and to have received and counted his vote; but as they were honestly in doubt as to his legal qualifications, then they had the right to reject or to receive the vote as their conscience and judgment should dictate; and this, we conceive, is the fair construction and interpretation of what the judge below said to the jury in that portion of his charge to which the plaintiff has excepted. We are, therefore, of the opinion that there is no such error apparent upon the record as will entitle the plaintiff to a reversal of the judgment. Whatever error may have been committed by the jury in weighing and estimating the testimony in the cause, we think the Court committed no wrong in the instructions given to the jury as to the law applicable to the facts involved in the cause. We think that in this case, the plaintiff mistook his remedy in excepting to the ruling of the judge below. If he had any remedy we think it was to have been found in a motion to set aside the verdict of the jury as being against the law and evidence.

The judgment below is affirmed.