BUCKNER v. DUFRESNE, Executive Officer of
Alaska Game Commission,. et al.

No. A–2671.

District Court of Alaska.   Third Division.   Anchorage.

Oct. 2, 1941.

Warren N. Cuddy, of Anchorage, for petitioner.

Noel Wennblom, Asst. U. S. Atty., of Seward, for defendants.

George Folta, Counselor at Large for Dept. of the Interior, of Juneau, for defendants.

HELLENTHAL, District Judge.

The petition in this case was filed September 19, 1941, on which date an order allowing the alternative writ was made, which order provided for the issuance of the alternative writ, returnable on the 22nd day of September, 1941. The alternative writ, called a Writ of Mandate, was issued on the 19th day of September, 1941, and served upon the defendant Jack O'Connor on the 20th day of September. The cause came on for trial on September 22, the day on which the writ was returnable, at which time the defendant Jack O'Connor was in default for want of an appearance and answer. The petitioner was present with his attorney, and asked that a peremptory writ be issued and offered testimony on his behalf, whereupon the matter was taken under consideration and afterwards the trial was continued until 10 o'clock A.M. on September 24.

Shortly after said hearing on the 22nd of September, the Court was notified by the United States Attorney that he was taking the matter of his appearance up with the Attorney General of the United States, and the next day the Court was notified by telephone by George Folta, Esq., General Counselor for the Department of the Interior that he would appear in the above-entitled cause. As a result of which, the Court, on the 24th day of September continued the trial in the above-entitled cause until 10 o'clock A.M. on the 26th day of September, 1941, so that said Mr. Folta might have an opportunity to appear.

On the 26th day of September, Mr. Folta appeared for the defendants and filed a demurrer on behalf of the defendant Jack O'Connor, which demurrer, after having been argued by respective counsel was overruled by the Court and the defendant Jack O'Connor was given until 2 o'clock P.M. of the 26th to answer. The defendant Jack O'Connor having answered in the cause, the Court furnished both petitioner and defendant with copies of testimony previously taken and gave the defendant the list of authorities furnished the Court by the petitioner; and, testimony having been introduced on behalf of both parties and the parties having rested, the Court indicated that it would decide in favor of the petitioner and instructed the petitioner's attorney to present a peremptory writ, which writ was thereafter presented by the petitioner, but not signed.

On the morning of September 27th, the defendant Jack O'Connor, by and through Noel Wennblom, Assistant United States Attorney, filed a motion to vacate judgment and the defendants, by Noel Wennblom, Assistant United States Attorney, also filed a purported motion for continuance. The Court took said motions under consideration and on September 29, overruled the motion of the defendant Jack O'Connor to vacate the judgment and gave further consideration to the motion for a continuance. Whereafter, and on September 30, the Court reopened the case and allowed the defendant Jack O'Connor until 2 o'clock P.M. on September 30 within which to file a demur-

rer, and set a hearing on the demurrer, if filed, at 10 o'clock A.M. on October 1, and gave the defendant Jack O'Connor until 10 o'clock A.M. October 2 to file an amended answer, if he so desired, and to introduce further testimony, if desired and to cross examine the petitioner herein.

No demurrer was filed. The defendant Jack O'Connor having filed an amended answer herein and the matter having come on regularly for hearing at 10:35 o'clock A.M., October 2, and the Assistant United States Attorney having waived the right to cross-examine the petitioner and having failed to introduce further evidence, the petitioner introduced further evidence and respective attorneys having waived argument, the Court is of the opinion that two questions are presented. The first question is whether or not General Buckner is a resident of the Territory and whether he had been such resident for more than a year before he made application for the license in question.

The law as to residence is well stated in Restatement of the Law, Conflict of Laws, Section 21, page 41:

"C. Soldiers and Sailors. A soldier or sailor, if he is ordered to a station to which he must go and live in quarters assigned to him, cannot acquire a domicil there though he lives in the assigned quarters with his family; for he must obey orders and cannot choose to go elsewhere. If, however, he is allowed to live with his family where he pleases provided it is near enough to his post to enable him to perform his duty, he can acquire a domicil where he lives.

"Illustration. 2. A's domicil is X. As an officer in the army, A is required to live in that part of Y devoted to the purposes of an army post, his family being permitted to reside and residing there with him. A is still domiciled in X.

"3. A's domicil is X. A is an army officer stationed at Y. He is permitted to live outside the army post. A marries a resident of Y, purchases a house in Y and lives there with his family with the intention of making it his home. A acquires a domicil of choice in Y."

■ This matter is reviewed in a note, 129 A.L.R., page 1387, where it is stated: "The fact that one is on military duty, however, does not preclude him from establishing his residence where he is stationed if he so desires, and where both the act and the intention to acquire a new domicil concur", citing many cases.

■ The Court is of the opinion that the above quotations in regard to domicil clearly state the law and that the proposition of law is well established. Under the facts in this case, there can be no dispute about the fact that General Buckner has lived in Anchorage for more than a year with an intention to make it his domicil, Exhibit A.

■ The other question in this case is whether or not the Court can mandamus the defendant. This matter is covered by Section 4116, C.L.A., '33: "To whom writ may issue; not to control judicial discretion. It may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. But though the writ may require such court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. * * * "

Title 48, U.S.C.A. § 199, provides:

"(Subdivision I.) Fees and applications for, and issuance of licenses and permits. Licenses and resident export permits shall be issued by the commission through its members, game wardens, and other persons authorized by it in writing to sell licenses. Resident export licenses and permits may also be issued by customs officers. Application blanks for licenses and permits shall be furnished by the commission and shall be in such form as the commission may by regulation determine. Each application shall be subscribed and sworn to by the applicant before an officer authorized to administer oaths in the Territory. * * * "

"(Subdivision J.) False statement in application for and alteration and expiration of licenses. Any false statement in an application for license as to citizenship, place of residence, or other material facts shall render null and void the license issued upon it. Any person who shall make any false statements in an application for a license shall be guilty of a violation of this subchapter and upon conviction of any such violation shall be punished as provided in section 202 of this title. * * * "

"Sec. [§] 207. Who deemed residents; who deemed aliens. For the purposes of this subchapter a citizen of the United States who has been domiciled in the Territory for the purpose of making his permanent home therein, for not less than one year immediately preceding his claim for resident privileges, * * * shall be considered a resident; * * *."

23 Words and Phrases, Perm.Ed., page 278, 280, 262, 263; Rowley v. VanBenthuysen, N.Y., 16 Wend. 369, 378:

"Judicial discretion is that discretion which is not, and cannot be governed by any fixed principles or rules." Roy v. Tanguay, R.I., 131 A. 553, 554: " 'Judicial discretion' is choosing between doing or not doing a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done." Alden v. Hinton, 6 D.C. 217, 223: "Judicial discretion is the option which a judge may exercise between the doing and not doing of a thing, the doing of which cannot be demanded as an absolute right of the party asking it to be done." Neal v. State, 214 Ind. 328, 14 N.E.2d 590, 593: " 'Judicial discretion' is the option which a judge may exercise between the doing, and the not doing of a thing which cannot be demanded as an absolute right, * * *."

In People ex rel. Armstrong v. Murphy, 65 App.Div. 126, 72 N.Y.S. 475, the Court held: "The refusal of a police commissioner to issue a theatrical license is a discretionary and not a judicial act, and therefore is not subject to review by certiorari." State v. Doyle, 40 Wis. 175,

188, 22 Am.Rep. 692, holds that: "Acts of the Secretary of State in issuing and revoking licenses to foreign insurance companies, under the statute, are ministerial and not judicial, although he is required to ascertain the existence of the facts upon which his authority in each case is founded."

The application made by the petitioner was introduced in evidence and marked Petitioner's Exhibit A, from which it appears that the said application was made upon a form provided by the Alaska Game Commission and purports to be Form AGC-27, April 1940, the pertinent part of which application reads:

"Application for Resident Hunting License, United States of America, Territory of Alaska, ss: I, Simon Bolivar Buckner, Jr. hereby make application for a Resident Hunting License, authorizing me to hunt animals and birds in the Territory of Alaska during the open season of the year ending June 30, 1942, subject to the Alaska Game Law as amended, and regulations thereunder, and first being duly sworn, state: I have been a resident of Alaska for the past year; my permanent home is at Anchorage, Alaska; and I am a citizen of the United States by birth; my age is 55 years; height 5 feet 10½ inches; weight 185 pounds; complexion Ruddy; color of eyes, Blue; color of hair, gray, (Signed) S. B. Buckner, Jr., Subscribed and sworn to before me at Anchorage, Alaska this 5 day of Sept. 1941. (Signed) W. N. Cuddy, Notary Public for Alaska, My commission expires Aug. 29, 1945." (Notarial Seal impressed.)

The applicant testified that he made oral application at the office of the Alaska Game Commission in Anchorage, Alaska, at which time the defendant O'Connor was present, and thereafter and on the 5th day of September made written application and offered to pay the fee at the office of the Alaska Game Commission in Anchorage, Alaska, at which time, however, the defendant O'Connor was not present. Under the testimony, however, it is clear that O'Connor has general charge of said office, but in the matter of issuing li-

censes, Mr. Maxwell, who was present at the time the written application was presented at the office, has equal authority with the defendant O'Connor.

The Court is of the opinion that the application made for a Resident Hunting License by the petitioner was made upon a regular form furnished, and by regulation determined, by the Commission; that the licensing officer or person or even the executive officer has no authority to require additional proof. The forms required by law must be furnished by the Commission and shall be in such form as the Commission may by regulation determine. This precludes anyone but the Commission itself from prescribing additional forms, and there is no evidence that an additional form has been determined by the Commission. It is provided in the Act that persons may be authorized in writing to sell licenses (there is no provision for oath of office or bond) and that such licenses shall be issued by the Commission through the members and such other persons authorized; that any false statement in an application for a license, as to citizenship, place of residence and other material acts, shall render null and void the license issued upon such application.

█ From the foregoing, the Court cannot help but determine that the selling of a license under the circumstances presented in this case is a ministerial act and does not involve the use of discretion, let alone judicial discretion.

Therefore, the Court is of the opinion that the petitioner had a right to have the defendant sell him a license upon making and presenting the application, Exhibit A, and the payment of $1, and that the refusal to sell the applicant such license upon the showing made should be compelled by this Court by a peremptory writ of mandamus.