BLANCHE WILLIAMS

*v.*

WALTER L. WILLIAMS.

[Decided December 21st, 1910.]

1. The *bona fide* residence of petitioner with intent of remaining within the state, which *P. L. 1907 pp. 476, 477 §§ 6, 7*, requires to confer jurisdiction in divorce, cannot be shown by petitioner's evidence alone; it being necessary that she be corroborated by other satisfactory evidence.

2. In order to give jurisdiction to grant a divorce to one coming to the state from another state. there must be an actual residence for two years with intention of remaining, so as to acquire a domicile in the state; the "domicile" of a person being the place in which he has voluntarily fixed his habitation, with a present intention of making it his home, until he is induced to adopt another permanent residence by some uncertain or unexpected event.

3. In an action for divorce by one coming to this state from another state, evidence *held* not to sufficiently corroborate petitioner's evidence as to the good faith of her residence in this state or her intention to permanently remain.

4. Declarations made by petitioner in a divorce action after the commencement of the action and shortly before the evidence was taken cannot be considered as evidence of the good faith and the permanency of her residence in the state.

On petition for divorce and exceptions to master's report.

*Mr. James E. Pyle,* for the petitioner.

PITNEY, CHANCELLOR.

This is an undefended suit for absolute divorce on the ground of desertion. The special master to whom it was referred reported that the jurisdictional fact of the petitioner's residence in this state during the period of the desertion was not sufficiently proven.

It appears that the parties were married in the city of New York in October, 1904, and resided there until August, 1905, when the defendant went to Panama as a civil engineer. For about a year he wrote to the petitioner frequently, and afterwards occasionally until the month of February or March, 1907. He returned to New York in May, 1907. Petitioner at this time was living with her parents on Forty-seventh street in New York City. Defendant called upon her, but did not remain, declaring that he did not want to live with her any more. This declaration was repeated in the presence of petitioner's brother, who endeavored to ascertain from defendant the cause of the difficulty between the parties, and to whom defendant answered that "there was nothing to do about it;" that he did not "want to live with her." He said they were always quarreling and could not get along together. Defendant returned immediately to Panama.

Although the petition avers that the desertion occurred on December 7th, 1907, the special master finds (properly, I think) from the evidence of the petitioner, corroborated by that of her brother, that the desertion in fact commenced in the previous May and has been continuous since that time.

Petitioner continued to reside in the city of New York until October, 1907, when she came to Jersey City and secured a boarding place with a Mrs. Hammond, who, so far as appears,

was previously an entire stranger to the petitioner and her family.

While living with Mrs. Hammond, and in the latter part of December, 1907, petitioner received a letter from her husband, written in Panama, and dated December 7th, in which he re-iterated his purpose to have nothing more to do with her.

Petitioner's parents, and all other members of her family, continued to reside in New York until after the commencement of this suit, the petition in which was filed on January 4th, 1910. Petitioner was employed as a stenographer in New York City, and remained in this employment until August, 1909, when she gave up her position on account of ill health, continuing, however, to board in Jersey City.

Her own statement is, when asked what was her object in coming to Jersey City to live:

"I had to work for a living, and I thought it was cheaper to board over here and live over here; I also felt discouraged on account of people asking me where my husband was; I have not got a friend in New York now; I gave them all up on account of the disgrace of my husband leaving me; I did not want to meet them."

When asked about her arrangements for the future, she replied: "I intend to live in Jersey City." She denied that at the time she came to Jersey City to live she knew anything about the law respecting a divorce on the ground of desertion.

Assuming, but not deciding, that this evidence, if properly corroborated, would show such a residence of the petitioner in this state as would warrant the court in granting a divorce on the ground of desertion, I agree with the special master that there is not sufficient corroboration.

In *McShane* v. *McShane, 45 N. J. Eq. (18 Stew.) 341,* which arose under the Divorce act of 1874 (*Rev. 1877 p. 314*), the advisory master held that "The jurisdictional fact of residence must be duly proved like any other fact in the case. The petitioner's evidence cannot be relied upon exclusively as to the fact of residence. A divorce is never decreed upon the unsupported testimony of the complainant." The decree was unanimously affirmed by the court of errors and appeals for the reasons given by the advisory master.

In *Tracy* v. *Tracy,* 60 *N. J. Eq.* (*15 Dick.*) 25, Vice-Chan-cellor Pitney held in effect that the mere sworn statement of the petitioner as to the *animus manendi* was not sufficient to estab-lish it in the absence of corroborating circumstances. Upon appeal the decree was reversed, as appears from the opinion of Judge Voorhees (*62 N. J. Eq.* (*17 Dick.*) *807, 809*), upon the ground that petitioner's testimony was clear, consistent and not intrinsically improbable; that it was not contradicted, and was not in any way impeached; and that her testimony was "sufficient *after the other testimony produced,* under the statute, to establish her residence here and entitle her to the divorce prayed for."

As I read this opinion, it did not dispense with corroboration, but found corroboration in the other evidence referred to. . That this interpretation is correct appears, I think, conclusively from the subsequent decision of the same court in *Wallace* v. *Wallace,* 65 *N. J. Eq.* (*20 Dick.*) *359.* In that case, as appears from the report, the special master expressed himself as follows: "Since mere residence, without *animus manendi,* will not support a divorce suit, the existence of the *animus manendi* must be proved as fully as other material facts are required to be proved. The sworn statement of the complainant is not enough. It must be corroborated by facts preceding and attending the change of residence." And in support of this proposition he cited the *Tracy Case.* The court of review, in an opinion by Judge Vroom, expressly approved this declaration by the special master, the language employed being as follows (*65 N. J. Eq.* (*20 Dick.*) *363:* "In the case of *Tracy* v. *Tracy,* in this court (*62 N. J. Eq.* (*17 Dick.*) *810*), the definition of residence is adopted as the place where a person's habitation is fixed, without any inten-tion of removing therefrom, and it was well said by the special master, in his finding in this case, that mere residence, without an *animus manendi,* will not support a divorce suit, and that the *ani-mus manendi* must be proved as fully as other material facts are required to be proved."

And Judge Vroom's opinion concludes with the statement that the proofs showed that the complainant's residence was acquired with the *animus manendi,* and that she was corroborated by sat-

isfactory evidence as to her intention to remain permanently in New Jersey.

The importance of the rule requiring such corroboration is manifest when we consider how easily, otherwise, the courts of this state would be imposed upon in "emigrant" divorce cases. Instructive cases are *Firth* v. *Firth, 50 N. J. Eq. (5 Dick.) 137; Sweeney* v. *Sweeney, 62 N. J. Eq. (17 Dick.) 357; Grover* v. *Grover, 63 N. J. Eq. (18 Dick.) 771, 775, 796; Hunter* v. *Hunter, 64 N. J. Eq. (19 Dick.) 277, 283; Mason* v. *Mason, 69 N. J. Eq. (3 Robb.) 292.*

Where it appears that there was a matrimonial domicile in a foreign state, and the claim is that the party invoking our jurisdiction has become a resident of this state, it has been uniformly held that the mere fact of residence here is not sufficient. Our courts, in divorce cases, have adopted the test enunciated by Mr. Justice Depue (afterwards chief-justice), speaking for the court of errors and appeals in *Harral* v. *Harral, 39 N. J. Eq. (12 Stew.) 285,* viz.: "There must be a voluntary change of residence; the residence at the place chosen for the domicile must be actual; to the *factum* of residence there must be added an *animus manendi;* and that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home."

Such was the test applied in cases arising under the Divorce act of 1874 (*Rev. 1877 p. 314; amended P. L. 1889 p. 48*), which in terms required only that "the complainant or defendant shall be a resident of this state at the time of filing the bill of complaint, and the complainant or defendant shall have been a resident of this state for the term of three (afterwards two) years, during which such desertion shall have continued." Besides the cases already cited, I may refer to *Magowan* v. *Magowan, 57 N. J. Eq. (12 Dick.) 322, 324.*

Manifestly the same test would apply to the Divorce act of 1902 (*P. L. 1902 p. 502*), which, in defining the jurisdiction, employed this language: "In cases of desertion, provided the

parties complainant and defendant, or either of them, shall have been resident in this state during two years of the time for which the desertion relied on for cause of divorce shall have continued, and such residence shall have continued until the filing of the bill or petition."

And certainly no lighter test can be applied to an action prosecuted (as the present action is) under the act of 1907 (*P. L. 1907 p. 474*), in the sixth and seventh sections of which the jurisdiction of the court is made to depend upon the *bona fide* residence of the parties or one of them.

In the present case only two witnesses are called in corroboration of the petitioner. One of these is Mrs. Hammond, the boarding-house keeper, who says she has known petitioner since October, 1907; that petitioner came to live with her then and has lived with her ever since. The witness continues:

"All that time she has worked in New York until August, 1909. She gave up her position in New York then on account of her health. She had two hemorrhages while she lived with me. She was sick most all of the time. She told me nothing about why she had come to New Jersey to live, but she said she was going to keep on working and going to buy a home. I do not remember that she ever said where she was going to buy the home, but I took it for granted that she was going to buy in Jersey City. I understood her to mean that she was going to buy a house with her money and her husband's put together. When she said this I was up in her room, and she told me that she was working so that she and her husband could buy a home together. I then told her how my husband and I had worked and saved and bought our home. Occasionally she was away from my house. She was accustomed to spend her Sundays in my house, except when she went out for a walk."

The witness does not specify when it was that the petitioner made the declaration of a purpose to buy a home with her own and her husband's money put together; but as petitioner, according to the clear and uncontradicted evidence, had been deserted by her husband before she went to Jersey City to live, the declaration impresses me as an effort on the petitioner's part to disguise her real purposes from the witness.

There is nothing else in this witness' evidence upon the question of the *animus manendi* except one or two declarations by petitioner, of little moment in themselves, and which, I think, are wholly deprived of importance by reason of the fact that they

were made after the commencement of this action, and indeed shortly before the taking of the testimony.

The brother's evidence has no direct reference to the character of the petitioner's residence in this state, nor to her intention about remaining here. He never visited her in Jersey City, and learned of her residence there from the mother on an occasion when the petitioner was not present. He states that the mother died January 20th, 1910 (this was after the filing of the petition herein), and says that the father shortly afterwards gave up his home, disposed of his furniture and removed to Peekskill, New York. He states that he (the witness) lives with his wife and child in New York and is unable to offer his sister a home.

It does not seem to me that this evidence can be considered as substantially corroborating the testimony of the petitioner respecting the *bona fides* of her residence in this state or her intention to permanently remain here. So far as appears, she has formed no lasting ties or associations of any kind in Jersey City or elsewhere in this state. So far as the evidence discloses she has not made the acquaintance of a single individual other than her landlady. All the evidence (aside from petitioner's mere declaration of her own purpose) is entirely consistent with the theory that she came to Jersey City to board for the purpose of laying the foundation for the present action, and for no other purpose; that her residence here has been unhappy and her life and surroundings distasteful to her, and that as soon as the compelling reason for remaining here, arising from the operation of the Divorce act, is at an end, she will speedily depart.

For these reasons I agree with the special master that there is not sufficient corroboration respecting the *animus manendi.*

The exceptions to the master's report will therefore be overruled and the petition dismissed.

I express no opinion upon the question whether the petitioner's "cause of action arose" before she became a resident of this state, within the meaning of section 6 of the Divorce act of 1907 (*P. L. 1907 p. 477*), so as to bring her case within clause (b) of that section, and so as to deprive this court of jurisdiction, in the absence of evidence to show that the cause of action

alleged was recognized in the jurisdiction in which she resided, at the time it arose as a ground for the same relief asked for in this action.