RAYMOND A. McCORMACK, petitioner,

*v.*

FRANCES M. McCORMACK, defendant.

RAYMOND A. McCORMACK, petitioner,

*v.*

FRANCES M. McCORMACK, defendant.

[Decided May 27th, 1925.]

Divorce—Adultery—Custody of Child—Divorce Suit Dismissed, the Evidence Leaving the Jurisdictional Facts Insufficiently Corroborated—Court Convinced That Defendant's Previous Divorce in Maryland was Procured by Fraud, and Subsequent Marriage Illegal, That Child May be Better Cared For by Father Than by Mother, and Decree For Visitation by Father During School and Custody During Summer is Made, Order to Run Till September, When Matter May Again be Brought Up.

On final hearing.

*Mr. Philip M. Chamberlin,* for the petitioner.

*Messrs. Oliphant & Mitchell,* for the defendant.

BUCHANAN, V. C.

These two cases were tried together, the first being on petition for custody of Raymond A. McCormack, Jr., the infant son of the parties (husband and wife, living separate and apart), and the second being a petition for divorce on the ground of adultery. Defendant contests any award of custody

of the child to petitioner on the ground that petitioner is not a resident of this state, and defends the divorce action by setting up a decree of divorce from petitioner granted by a Maryland court.

The jurisdiction of this court in divorce causes its statutory. By our statute, in suits for divorce for adultery, it is made essential to jurisdiction that at the time of the adultery one or the other of the parties was a *bona fide* resident of this state and has so continued down to the commencement of suit; or that since the adultery, one of the parties has become such resident and has so continued for at least two years next preceding the commencement of suit.

Residence, under this statute, means legal domicile. *Mason* v. *Mason, 69 N. J. Eq. 292; Rinaldi* v. *Rinaldi, 94 N. J. Eq. 14.*

The petition aleges the residence of the wife in this state at and from the time of the adultery to the commencement of suit.

The legal domicile of the wife is that of the husband—she canot acquire a separate domicile of her own, unless by his consent or by reason of his misconduct. *Rinaldi* v. *Rinaldi, supra; Floyd* v. *Floyd, 2 N. J. Adv. R. 638; Pennello* v. *Pennello, 3 N. J. Adv. R. 792.*

The evidence does not show any facts warranting a finding that defendant had a domicile separate from that of the petitioner. Rather does it indicate the contrary. It appears that each sought divorce, by petition and counter-claim, in a suit in this court about five years ago; that both petition and counter-claim were dismissed; that the husband immediately asked the wife to resume cohabitation, and made an appointment with her to discuss the situation; that she did not keep the appointment, but fled to Maryland with the child and kept their whereabouts concealed from the husband for several years.

Having obtained a decree of divorce from a Maryland court she returned to Trenton about July 1st, 1921, went through a ceremony of marriage with Welker, and has ever since been

40

living here with Welker as man and wife—which is the adultery charged.

The decree in the earlier suit dismisses petition and counter-claim simply for failure of proofs in support of their respective allegations; but whether the proofs were edefective as to jurisdictional facts or as to grounds for divorce does not appear in the decree. It does not appear in the present suit whether or not, prior to that decree, the wife had acquired a separate domicile or the right thereto.

Coming, then, to the husband's domicile, it appears that his home was originally in Trenton; that the matrimonial domicile was in Trenton; that his mother and sister live here (his father is dead); that for several years past the husband's business has been in New York, and that he has lived in hotel rooms or apartments in New York during the week, spending the week-ends every week or two with his mother in Trenton, and occasionally in the middle of the week; that he has bought a house on the Long Island shore for investment or speculation, with the intent to occupy it during the summers until he sells it.

As to the intent accompanying his actual residence in New York, there is practically no testimony whatever. He says that Trenton is his home, and the rooms in New York are merely a place to live while there; but there is no testimony as to the intent with which he orignally left Trenton or commenced his living in New York. His petition in the divorce suit recites that he is "of the city of New York," &c. His petition in the *habeas corpus* proceeding (filed a little earlier) recites that he is "of the city of Trenton," &c. He files his income tax return in New York. He says he has his United States army mail sent to him in Trenton, and votes in Trenton. This latter is of weight, but there is no corroboration. Corroboration is necessary. *Williams* v. *Williams, 78 Atl. Rep. 693.*

Counsel for the husband contends that, in fact, the dismissal of the petition and counter-claim in the prior suit was because the proofs showed the parties were living separately

by consent; that this is *res adjudicata* in the present case; that because of such consent by the husband the wife could—and in fact did—acquire a separate domicile in Maryland, and later a domicile of her own in New Jersey, which is sufficient to give jurisdiction in the present case.

The difficulty is that the decree in the prior suit does not adjudicate that the parties were living separately by consent. That decree simply dismisses the petition and the counter-claim, and the only adjudication of fact therein expressed is that the proofs of the petitioner were insufficient to support the allegations of the petition and the proofs of the defendant were insufficient to support the allegations of the counter-claim. Manifestly, it is not a necessary inference or conclusion from this that the court must have found that the parties were living separately by consent. It would be equally as possible an inference that the decree was the result of a finding that the separtion had not continued for two years, or that the jurisdictional requisites had not been proven, or any one of several other possibilities.

The burden of proof is upon the petitioner to establish the jurisdictional facts by satisfactory evidence and corroboration. The evidence in the present case leaves the matter in doubt, and I am constrained, therefore, to dismiss the petition for lack of sufficient proofs on this statutory requisite. *Williams* v. *Williams, supra; Mason* v. *Mason, supra.*

There remains the question of custody of the child, who is a boy of seven or eight years old.

I am entirely satisfied from the evidence that the Maryland decree was procured by fraud, and that it is invalid in this state. It follows, of course, that the wife's cohabitation with Welker is adulterous.

The wife and Welker are both employed during the day, and the child is chiefly in the care of the maternal grandmother. Petitioner was denied access to the child before the trial in the prior suit, and as has been already noted, was deprived even of knowledge as to his whereabouts by the wife's flight and concealment four years ago.

The child has been taught to call Welker "Daddy." So far as the "rights" of the parties are concerned, the petitioner's claim is superior, under the circumstances. It is the boy's welfare, of course, which is the paramount consideration.

Aside from the questionable character of his present surroundings, the boy has a right to the affection, association and companionship of his father—of which he has been deprived in the past to his detriment. The father's income is several times larger than the combined income of defendant and Welker—he is amply able to give the child proper care and surroundings. His affection for the boy is evident, and it further appears that the paternal grandmother and aunt are fond of the boy and will contribute by their efforts to his well-being.

It would not be well to make too sudden a change. For some months past the father has had weekly visits with the child, under the order of this court, and more recently has been allowed to have the child over night on alternate week-ends.

Henceforth, these week-end visits may be weekly, instead of alternate weeks, until the close of school. Thereafter, and during th summer, the father may have the boy, and may take him to the summer home in Long Island if he desires, with proper provision for occasional visits to or by the mother. I do not deem it wise at the present time to provide for farther in the future. These decrees are always subject to modification under changing circumstances, and the order now to be made can run until September, with a day certain to be fixed when the matter can be again brought before the court and a further determination made upon the basis of the circumstances as they then exist.

The petitioner will be required to give bond in the sum of $3,000, conditioned for obedience to all further orders of the court in the matter. The wife is already under *ne exeat* bond.