MABEL B. WINANS *vs.* ANTHONY V. WINANS.

Essex.    November 5, 1909. — March 23, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Domicil.    Marriage and Divorce.*

One, who has come into this Commonwealth with the intention of residing here permanently and without any intention of returning to a former place of abode and remains with his wife at a hotel in a city in this Commonwealth for about two weeks, entertaining friends and looking around to find a suitable house in which to live permanently in the suburbs of the city, has acquired a domicil in this Commonwealth, although in no particular city or town.

If a man comes here with his wife after their marriage in New York for the purpose of making his home permanently in this Commonwealth, although he is undecided as to the city or town in which he will reside, and remains at a hotel in a city of this Commonwealth for less than two weeks, looking around for a house in the suburbs in which to live permanently, after which he and his wife leave for a health resort in another State at the request of his mother, who is ill there, and he, before leaving the city in this Commonwealth, authorizes his wife's sister to find a suitable apartment for him and his wife in a certain town adjoining that city, and she does so, and he afterwards sends his clothes there, but when he is on his way there with his wife stops off in New York, and thereafter never rejoins his wife or returns to this Commonwealth, he has acquired a domicil in this Commonwealth; and, at the trial of a libel against him for divorce, a finding by the trial judge that the libellee and his wife never "lived together as husband and wife in this Commonwealth" within the meaning of R. L. c. 152, § 4, is not warranted in law.

MORTON, J.    This is a libel for divorce.    The libellee was duly served and appeared, but was subsequently defaulted.    Upon

the evidence before him the presiding judge * "found and ruled that the parties never lived together as husband and wife in this Commonwealth within the meaning of the statute and on that ground ordered that the libel be dismissed," and at the request of the libellant reported the case to this court. If on the facts found by him the finding was not warranted in law, a decree *nisi* on the ground of desertion is to be entered; otherwise, the libel is to be dismissed.

So far as the question is one of fact the presiding judge has determined it adversely to the libellant. But the facts upon which he based his conclusion that the libel should be dismissed have all been reported by him, and the question whether he was wrong in ruling as he did becomes therefore a question of law.

The statute provides that "A divorce shall not, except as provided in the following section, be decreed if the parties have never lived together as husband and wife in this Commonwealth." R. L. c. 152, § 4. The exception referred to is immaterial so far as this case is concerned. The libellant concedes that it must appear that the parties were domiciled in this Commonwealth in order to satisfy the requirement that they shall have lived together here as husband and wife. *Ross* v. *Ross*, 103 Mass. 575. *Weston* v. *Weston*, 143 Mass. 274. The question then is whether the presiding judge was wrong in finding, as he must have found, that the parties were not domiciled in Massachusetts.

It is plain that the libellant never lost her domicil in this Commonwealth, except by reason of her domicil following that of the libellee, and we therefore need not consider further the facts in regard to her status. Was the presiding judge wrong in finding that the libellee did not acquire a domicil here? The parties were married in New York city. The domicil of the libellee before marriage, as the judge has found, apparently had been in New York; and certainly, as he further found, it never had been in Massachusetts. The libellee had no business or family ties in New York and no fixed place of abode there or elsewhere, but roomed in various hotels in New York city, when not travelling with his mother, who spent her time in health resorts. He was upwards of forty years of age and had no occu-

---

* *Fox, J.*

pation.   The remainder of such fortune as he had was involved in litigation in New York city, and he was heavily in debt there. These are all the facts found in regard to the libellee's domicil before marriage, and his condition and circumstances, and they show conclusively, it seems to us, that he had no fixed place of abode in New York city and no family or business or other ties to keep him there.   His domicil, if he had one there, would seem to have been of the most unsettled character.   Indeed the presiding judge goes no farther than to find that his domicil before marriage "apparently" had been in New York, as though the matter was not free from doubt.   Under such circumstances the acquisition of a new domicil or a change of domicil will be much more easily and readily inferred than when one has a fixed place of abode and a family and an established business, and associations more or less deeply rooted and permanent.   A few days after the marriage the libellee and his wife came to Boston to the Hotel Touraine, where they stayed entertaining their friends and looking around for a house in which to live permanently. They examined various places in the suburbs, but made no choice. The libellee said that he liked Boston and expected to enjoy living there.   After they had been in Boston less than two weeks they went to a health resort in Virginia at the request of the libellee's mother, who was ill there.   Before leaving Boston the libellee requested his wife's sister, who lived in Boston, to find a suitable apartment to be occupied by himself and his wife on their return.   The sister procured an apartment in Brookline, to which the greater part of the libellee's clothing, which, so far as appears was all the personal effects that he had, was sent, and for which he and his wife started when they left Virginia on their return about a month later.   On the way back from Virginia the libellee, who had expressed uneasiness about his financial affairs and a desire to see his lawyer, stopped off in New York, at his wife's suggestion, to see the lawyer. . He put the libellant and her daughter by a former marriage into the train for Boston and told her he would be in Boston in two days.   The libellant never saw him afterwards although he wrote expressing his intention to come.   The presiding judge found, as he could not very well have helped finding, it seems to us on these facts, that the parties intended to take up their residence in this Com-

monwealth when they came to Boston to the Hotel Touraine.
He found that they did not intend to live permanently in Boston
but in some suburb when a suitable place of residence could be
found. He was not satisfied that the libellee had any intention
of returning to this Commonwealth to live with his wife when
he parted from her in New York.

In order to acquire a domicil both the fact and the intent must
concur. Actual residence and the intention to remain either
permanently or for an indefinite time without any fixed or cer-
tain purpose to return to the former place of abode are required
to constitute a change of domicil. The length of the residence
is immaterial provided the other elements are present and are
found to exist. A day or an hour, it has been said, will suffice
for the acquisition of a domicil. Jacobs, Law of Domicil, § 134,
note. In this case, when the libellee came to Boston with his
wife he intended, as the presiding judge has found, to reside
permanently in this Commonwealth. There was no *animus re-
vertendi* on his part, and his intention to reside here was not
contingent on his finding a suitable place of residence, but the
finding of a suitable place of residence was rendered necessary
by his determination to take up his abode permanently in this
Commonwealth. He did not intend to reside in Boston. But
having come here with the intention to remain and with no fixed
or certain purpose to return to New York, the place where he
was for the time being must be regarded, we think, as his home
or domicil unless it can be said that he did not acquire a domicil
here until he had selected the place where he intended to reside
permanently. *Wilbraham* v. *Ludlow*, 99 Mass. 587. *Whitney* v.
*Sherborn*, 12 Allen, 111. We do not regard it as necessary that
he should have done that. If he had been *in intinere* on his way
from New York to some city or town in this State where he had
decided to live, and had stopped for a few days in Boston en-
tertaining friends and then had gone to Virginia and never had
returned to this State, so that he in fact never reached the place
where he intended to reside, the case would have stood differ-
ently. *Briggs* v. *Rochester*, 16 Gray, 337. In that case the fact
and intent would not have concurred until he reached his prede-
termined place of abode, which he would not have done. So, if
he had been passing through this Commonwealth to some town

or city in another State where he intended to make his home, and had remained for a few days at the Hotel Touraine, or if he had been here for some temporary purpose, like a wedding journey for instance, it is clear that he would not have acquired a domicil in this Commonwealth. *Shaw* v. *Shaw*, 98 Mass. 158. But this case differs from either of the cases thus supposed. In the case before us the libellee came here with his wife for the purpose of making his home in this Commonwealth, though he was undecided as to the particular place in which he would reside. For aught that appears he would have remained here except for his mother's illness which unexpectedly called him to Virginia. He had no intention to return to New York. An apartment was selected for him and his wife in Brookline, and he took possession of it by sending his clothing to it, though he never in fact occupied it, as to which see *Williams* v. *Roxbury*, 12 Gray, 21. Under such circumstances we think that the libellee must be deemed to have acquired a domicil in this Commonwealth and to have lived here with his wife as husband and wife within the meaning of the statute. He was here for a short time only, it is true, but, as we have seen, the acquisition of a domicil does not depend on the length of the residence and a domicil may be acquired in another State or country even if the party has not determined in what particular place he will take up his residence. As Chitty, J., said in *Craignish* v. *Hewitt*, [1892] 3 Ch. 180, 192, " A man may be domiciled in a country without having a fixed habitation in some particular spot in that country." See also *Bell* v. *Kennedy*, L. R. 1 H. L. (Sc.) 307, 320, per Lord Westbury; *White* v. *Tennant*, 31 W. Va. 790; *Bradley* v. *Lowry*, 1 Speers, (Eq.) 1; Dicey, Conflict of Laws, (2d ed.) 93 *et seq.*; Jacobs, Law of Domicil, § 134. For the purposes of taxation or of settlement under the pauper laws one must be an inhabitant of or have a domicil in some particular municipal division. *Briggs* v. *Rochester*, *supra*. *Colton* v. *Longmeadow*, 12 Allen, 598. But all that is required to give the courts jurisdiction in matters of divorce is that the parties shall have lived together as husband and wife in the Commonwealth, that is, that they should have had a domicil here. Parties who have come into this Commonwealth for the purpose of residing here permanently, without any intention to

return to their former places of abode, and who are looking around to find a suitable place in which to live, cannot be said to be *in itinere.*  Nor can their former domicil be said to adhere to them until they have fixed upon a place of abode in this Commonwealth.  They have abandoned their former domicil without any intention of returning, and with the intention of taking up their residence here either permanently or for an indefinite time; and from the nature of the case their domicil must be, as already observed, where they are for the time being although they do not intend to make their home in that particular place but do mean to make it in the Commonwealth into which they have removed.  The fact that the libellee may have had no intention of returning to this Commonwealth to live with his wife when he parted from her in New York is immaterial if he had previously acquired a domicil here.  The case before us differs from *Olivieri* v. *Atkinson,* 168 Mass. 28, and similar cases, inasmuch as it is expressly found in this case that it was the intention of the party whose domicil is in question to reside permanently in this Commonwealth.

The result is that in accordance with the report a decree *nisi* on the ground of desertion will be entered for the libellant.

*So ordered.*

*C. N. Barney,* for the libellant.

No counsel appeared for the libellee.

