# ERNEST THEODORE WEST *v.* DESSIE ALLENE WEST.

## No. 2434.

SUBMITTED MAY 4, 1940.　　　　　DECIDED JUNE 5, 1940.

COKE, C. J., PETERS AND KEMP, JJ.

OPINION OF THE COURT BY KEMP, J.

The libelant, Ernest Theodore West, filed his libel for divorce against his wife, Dessie Allene West, on November

17, 1938. The libelee, although a nonresident, appeared by attorney and admitted the marriage but denied all of the other allegations of the libel.

It appearing that the libelant was an enlisted man in the United States Navy, the circuit judge had a hearing upon the preliminary question of whether the libelant had met the prerequisite to jurisdiction of an action for divorce in respect to residence. This hearing was had October 26, 1939, before the Honorable F. M. Brooks, judge of the circuit court, first judicial circuit, division of domestic relations. At the close of the hearing the circuit judge rendered an oral decision on the question under consideration and found that the libelant had not been domiciled within the Territory of Hawaii for the length of time required by the Hawaiian Organic Act and the Hawaiian statute and dismissed his libel. Libelant has appealed from that order.

Section 55 of the Hawaiian Organic Act provides that "No divorce shall be granted * * * unless the applicant therefor shall have resided in the Territory for two years next preceding the application." Section 4461, R. L. H. 1935, is to the same effect. The term "residence" in section 55 of the Organic Act and section 4461 of the Revised Laws above mentioned is used in the sense of and as the equivalent of "domicile." The residence requirement is mandatory and jurisdictional, and a circuit judge is without authority to grant a divorce in the absence of proof of domicile for the necessary length of time. (*Zumwalt* v. *Zumwalt*, 23 Haw. 376.)

The facts developed at the hearing may be summarized as follows: Libelant was born October 5, 1902, at Muldrow, Oklahoma. In June, 1924, he was living with his brother in Kansas City, Missouri. He first enlisted in the navy June 5, 1924, and gave Kansas City, Missouri, as his home address. At the expiration of that enlistment

he again enlisted, giving Kansas City as his home. At the expiration of his second enlistment he again enlisted, this time giving Salt Lake City, Utah, as his home. While serving his third enlistment he was, for a short period of time, stationed at Pearl Harbor, Oahu. His stay at Pearl Harbor commenced in November, 1933, and ended in February, 1934. At the expiration of his third enlistment, in August, 1936, he was stationed at Boston, Massachusetts, and applied there for re-enlistment in the navy, for service in Hawaii. He was told by the naval authorities at Boston that if he desired to enlist for service in Hawaii he would have to go to San Diego, California, or to Honolulu, Hawaii, at his own expense, in order to enlist for such service. He did go to San Diego and re-enlisted for service in Hawaii, and within approximately one week thereafter he was sent to Hawaii for service and arrived here September 17, 1936, and has been on duty here ever since. His fourth enlistment service record showed his home address to be San Diego, California. His service record remained in this condition until September 21, 1938, at which time a dispatch from the bureau of navigation authorizing a change in his home address as shown in his service record was received by his commanding officer at Pearl Harbor. The evidence of his commanding officer is that libelant applied for that change sometime in June, 1938; that request for authority to make the change was then made to the bureau of navigation and the authority was received September 21, 1938. His home address was thereupon changed in his service record from San Diego, California, to 1536-C Kewalo street, Honolulu, T. H. At no time since his arrival in Honolulu has he resided either on a ship or upon the naval reservation. On the contrary, he has continuously resided off the naval reservation, in rented property in Honolulu, and at the time of the hearing in this case he was residing at the address given in his changed

service record. He has never paid a poll tax or other tax here or elsewhere. He has never registered or attempted to register as a voter here and testified that he has never voted anywhere. In explanation of the fact that his service record gave San Diego as his home address, the libelant testified that he was not asked for his home address; that the officer taking his enlistment inquired of him where he had been residing since his third enlistment expired, to which he replied that he was then living on a certain boulevard in the city of San Diego, California, consequently that address was given in his enlistment record as his home address. He further testified that when he left Boston to re-enlist, he had a fixed intention of abandoning any other home he had for the purpose of making Hawaii his home and permanent domicile, and has kept that intention ever since.

The circuit judge, in his oral opinion, made it clear that he did not hold that an army or navy man could not acquire a domicile in Hawaii while on duty here, but concluded from the foregoing facts that the libelant had not acquired a domicile in Hawaii prior to his request for the change in his service record, in June, 1938, and intimated that he believed from the evidence that the libelant had procured such change in his service record for the purpose of getting a divorce.

"The essentials upon which the conclusion of a change of domicile must rest, are an intention to abandon the old domicile and to acquire a new one in another place where a residence has been established." Kennan, Residence and Domicile § 246, p. 461. (See also *Gold* v. *Gold*, 100 Conn. 607, 124 Atl. 246, 247; *Williams* v. *Williams*, 78 N. J. Eq. 13, 78 Atl. 693; 19 C. J., tit. Domicile § 39, p. 418; Restatement, Conflict of Laws § 15, pp. 32, 33.)

"The intention required for the acquisition of a domicil of choice is an intention to make a home in fact,

and not an intention to acquire a domicil." Restatement § 19, p. 38.

"The motive with which a person acquires a new dwelling-place does not determine the question of the establishment of a domicil of choice, but it may be important evidence tending to show whether or not, when a new dwelling-place is acquired, there is an intention to make a home there." Restatement § 22, pp. 43, 44.

The comment upon the foregoing is to the effect that if a new dwelling place is acquired with the necessary intention of making it a home, it becomes a domicile of choice although there may be a special, even an unworthy, motive in making the change. Illustrating the foregoing comment, the author says:

"A changes his dwelling-place for the purpose of diminishing his taxes or avoiding the payment of a debt or for the purpose of securing a divorce. He intends, however, to make the new place his home. A's domicil is changed."

It is elementary that the former domicile remains until a new one is acquired. The law does not permit one to abandon, nor recognize an abandonment of, a domicile until another has been established. (*McDonald* v. *Hartford Trust Co.*, 104 Conn. 169, 132 Atl. 902. Compare *In Re Grant's Estate*, 144 N. Y. S. 567, 571.)

On the question of whether or not a soldier or sailor is so far *sui juris* as to be capable of acquiring a domicile of choice while in the military or naval service, Restatement, Conflict of Laws § 21, p. 41, says:

"A soldier or sailor, if he is ordered to a station to which he must go and live in quarters assigned to him, cannot acquire a domicil there though he lives in the assigned quarters with his family; for he must obey orders and cannot choose to go elsewhere. If, however, he is allowed to live with his family where he pleases provided

it is near enough to his post to enable him to perform his duty, he can acquire a domicil where he lives."

It is difficult to say to what extent the decisions in other jurisdictions have been influenced by constitutional or statutory provisions to the general effect that no soldier, sailor or marine in the military or naval service of the United States shall acquire a residence in or be deemed a resident of the State by reason of being stationed on duty within the State. We have no such statute. Such a provision in the constitution of New York was held "not to disqualify such persons from gaining or losing a residence, but renders the fact of sojourn or absence impotent as evidence either to create or destroy it; in other words, presence or absence has primarily no effect upon the political status of such person. The question in each case is still, as it was before the adoption of this provision of the Constitution, one of domicile or residence, to be decided upon all the circumstances of the case." *In re Cunningham et al.*, 91 N. Y. S. 974, 45 Misc. Rep. (N. Y.) 206.

In *Harris* v. *Harris*, 205 Iowa 108, 215 N. W. 661, the court referred to the fact that thirty-six States had constitutional provisions and four other States had statutory provisions preventing a soldier, sailor or marine from acquiring residence while on military duty. The existence of the constitutional provisions and statutes was referred to in support of a holding that an army officer whose domicile of origin was Des Moines, Iowa, had not lost his status as a resident of Des Moines by being absent therefrom from 1892 to 1927 on military duty in various army posts throughout the country. However, in a discussion of the ability of a soldier or sailor to acquire a domicile of choice, the court said:

"The one controlling question, although novel, finds easy solution. The question is whether a person who is an

officer in active service in the army of the United States can acquire a domicile in the army post or camp where he is stationed, even though he establishes his family there.

"The numerical weight of judicial authority answers the question in the negative. *Stevens v. Allen*, 139 La. 658 (71 So. 936); *Radford v. Radford* (Ky.), 82 S. W. 391; *State ex rel. Spence v. Judge of Ninth Judicial Circuit*, 13 Ala. 805; *Mead v. Carrol*, 6 D. C. 338; *Pendleton v. Pendleton*, 109 Kan. 600 (201 Pac. 62); *Inhabitants of Brewer v. Inhabitants of Linnaeus*, 36 Me. 428; *Tibbitts v. Townsend*, 15 Abb. Pr. (N. Y.) 221; *Graham v. Commonwealth*, 51 Pa. St. 255 (88 Am. Dec. 581); *Williams v. Saunders*, 5 Cold. (Tenn.) 60; *Henderson v. Ford*, 46 Tex. 627; *Yelverton v. Yelverton*, 1 S. & T. 574; *Attorney General v. Napier*, 20 L. J. Ex. 173; *In re Macreight*, 30 L. R. Ch. D. (1885) 165; 19 Corpus Juris 418. The legal principle is declared and approved by the American Law Institute. See Conflict of Laws, Restatement No 1, Topic 3.

"A naval officer cannot acquire a domicile at his station or on his vessel, for the same reason,—that his going and staying at his post when so ordered are not a matter of his choice. *Knowlton v. Knowlton*, 155 Ill. 158 (39 N. E. 595) (reversing 51 Ill. App. 71); *Brown v. Smith*, 15 Beav. 444.

"An officer may ask for a post, and may, on his application, be assigned to it; but this is entirely in the will of his superior officer, and the choice is not in the power of the applicant. Nor does an officer under martial discipline, when detailed for special duty in a certain place, acquire a domicile there, although he may take his family there (*Knowlton v. Knowlton*, supra; *Remey v. Board of Equalization*, 80 Iowa 470); and a person who enters the army of another country gets no domicile in the country whose army he joins. *Ex parte Cunningham*, 13 L. R. Q.

B. D. (1883-84) 418. Therefore, a person under such circumstances cannot, in any proper sense of the term, have a residence anywhere other than the home he has left, since he has no choice as to where he goes, the time he can remain, or when he shall return. To gain either an actual or a legal residence, there is, of necessity, involved at least the exercise of volition in its selection, and this cannot be affirmed of the residence of either a soldier or a sailor in active service. *Radford v. Radford*, supra.

"It is true that an officer or a private may establish a home near his military station, and thus acquire a domicile there, but this must be established by independent evidence of a change of domicile to that place. *Ex parte White*, 228 Fed. 88.

"If a soldier stationed at any army post is permitted to live outside the post, it was held in *In re Cunningham*, 45 Misc. Rep. 206 (91 N. Y. Supp. 974), such person may acquire a domicile there. There seems to be no doubt that a soldier may acquire a new domicile apart from the army, and the fact that he cannot stay in the new home if called away to the army does not prevent his forming the *animus manendi* and acquiring the domicile there. *Mooar v. Harvey*, 128 Mass. 219; *Hodgson v. De Beauchesne*, 12 Moore P. C. 285; *President of the United States v. Drummond*, 33 Beav. 449; *Attorney General v. Pottinger*, 30 L. J. Ex. 284."

We think the circuit judge was correct in declining to hold "that a man in the Army or Navy may not acquire residence in Hawaii even under the divorce statute." That being true, what prevented Hawaii from becoming libelant's domicile on the day he reached here and took up his residence in the city, off the naval reservation? The circuit judge did not hold that the libelant was not, at the time of the hearing, domiciled in Hawaii. What he held was that libelant did not become domiciled here until he ap-

plied to the proper naval authorities to have his home address as contained in his service record changed to Honolulu. His request for the change was not made until June, 1938. His libel was filed in November of the same year. If the circuit judge was correct in his conclusion as to when libelant acquired a domicile in Hawaii, the order dismissing the libel must be sustained. The circuit judge did not mention the important fact that ever since the libelant arrived here, in September, 1936, he has resided in the city, with the knowledge and consent of his superior officers, in quarters provided by himself.

*In Re Grant's Estate, supra*, p. 575, holds that an officer in the United States Army may abandon his former domicile and acquire a new one, on a military reservation in federal territory. This conclusion, however, is contrary to the great weight of authority in so far as it relates to the acquisition of a domicile on a military reservation. It is, however, supported by the weight of authority in so far as it relates to the capacity of one in the military service to abandon his domicile of origin or choice and acquire a new one in another State or Territory, not on a military reservation. A very fine distinction is drawn by the surrogate in General Grant's case between a domicile of origin and one of choice in the matter of effecting a change therefrom. It is said that where a person abandons his former domicile of choice and, with intent to take up a new domicile of choice starts toward the new, the change of domicile takes place the moment he puts himself in motion, though, if the domicile left is the domicile of origin, proof of arrival at the new domicile must be made in order to constitute a change. We need not determine whether the observation as to when a change from a domicile of choice is effected correctly states the law on that subject. It is not questioned that when the libelant filed his libel in this case he had actually resided in the

city of Honolulu, in the Territory of Hawaii, off the naval reservation, for more than two years next preceding that. act. If, therefore, he has met the other essential by proper proof that he changed his residence to Hawaii with intent to make it his home, the conclusion that Hawaii became his domicile immediately upon his arrival cannot be escaped. (*Winans* v. *Winans*, 205 Mass. 388, 91 N. E. 394, 28 L. R. A. [N. S.] 992.) The proof on the issue of intent consists solely of libelant's own evidence given at the hearing, unless it can be said that the state of his service record from the time he re-enlisted at San Diego until he requested a change is evidence which contradicts his evidence of intent.

As to the right of a party to litigation to testify to his own intent or motive when that intent or motive is to be investigated and how it may be met, see 1 Wigmore, Evidence (2d ed.) § 581, pp. 1017, 1018, where it is said:

"Under the influence of some obscure suggestion, not easily traceable, the view has been often urged upon Courts that a person—especially a party—should be disqualified from *testifying to his own intent* or motive, even where that intent or motive is material to be investigated.

"The argument is (so far as any has been vouchsafed) that such testimony may be falsified without the possibility of detection, and that therefore it is dangerous to permit an interested person to allege, in effect, whatever he pleases as to his own state of mind. The answers to this argument are various and sufficient. In the first place, there is no precedent for it in the inherited common law; it is an attempt to create a rule without an analogy in the accepted doctrines of the judicial rulings. In the next place, it assumes that there is no counter-evidence available, and yet asks that the only evidence which it assumes to be available shall be excluded,—in other words, asks that a concededly proper issue be submitted to the jury with no

evidence at all. In the third place, its assumption is incorrect in fact, namely, that there is no other available and sufficient evidence of intent or motive by which the person's own testimony can be tested and checked; for the evidence from conduct and circumstances and from others' testimony is not only a permissible but a potent source of belief, and is amply sufficient to guard against falsification. Finally, the argument is at least of no higher value than the argument in favor of the unsatisfactory statutory rule against survivors' testimony. * * * It is merely of a piece with all crude attempts to disqualify a witness by reason of interest,—attempts which today must stand discredited by the general repudiation of that species of disqualification."

The circuit judge referred to the fact that the authorities are not in harmony on the question here involved; that it had not been passed upon by this court and expressed the hope that this case would be appealed in order that this court might have an opportunity to pass upon it. There was no intimation that the testimony of the libelant was disbelieved. To the contrary, the circuit judge said that he believed the libelant really would like to live here. In other words, the circuit judge seemed to believe the libelant when he said that he abandoned his old domicile with the intention of making Hawaii his home, as well as the steps which he says he took to carry out that intent. Another fact to which no consideration has been given by counsel and was not mentioned by the circuit judge is that libelant's evidence as to when he abandoned his former domicile and when he took the preliminary steps to acquire a new one here all relates to the short period between his third and fourth enlistments. During that period he was not subject to naval orders, although before he reached his destination he again enlisted in the navy and again became subject to orders.

We think that both reason and authority support the following conclusions: (1) That an officer or enlisted man, when permitted to establish a home outside of his military or naval station, may thus acquire a domicile but cannot acquire a domicile when required to reside in quarters furnished by the government on a military or naval station; (2) that the fact that he cannot stay in the new home, if called away to perform his duties, does not prevent his forming the *animus manendi* and acquiring a domicile there; (3) that the motive with which a person acquires a new dwelling place, even an unworthy one, does not determine the question of the establishment of a domicile of choice, though it may be important evidence tending to show whether or not, when the new dwelling place was acquired, it was with an intention to make a home there; (4) that a change of domicile is effected immediately upon the concurrence of the two essentials, intention on the part of the one making the change to abandon the old domicile and the establishment of a residence in another place with the intention of making it his home.

The order appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*M. D. White* for libelant.

*E. J. Botts* for libelee.