## WILSON v. WILSON.
### No. A–3737.

District Court of Alaska.   Third Division.   Anchorage.
Oct. 13, 1945.

Davis & Renfrew, of Anchorage, for plaintiff.
George B. Grigsby, of Anchorage, for defendant.

DIMOND, District Judge.

Lawrence M. Wilson, the plaintiff, brought an action against Martha H. Wilson, the defendant, for a divorce. The specific ground for divorce is an alleged incompatibility of temperament.

Although being represented by counsel in the action, the defendant has not contested the divorce and it appears that satisfactory agreements have been arrived at between the parties with respect to property and with respect to the care and support of their one minor child. The proof is adequate and the decree would be granted as of course, except for the jurisdictional question involved as to the plaintiff's residence in the Territory of Alaska. The law of Alaska concerning time of residence required to maintain an action for divorce in the courts of Alaska is to be currently found in Section 3992 of the Compiled Laws of Alaska 1933, reading as follows:

"In an action for the dissolution of the marriage contract the plaintiff therein must be an inhabitant of the Territory at the commencement of the action and for two years prior thereto, which residence shall be sufficient to give the court jurisdiction without regard to the place where the marriage was solemnized or the cause of action arose."

In his testimony given in support of his action the plaintiff stated that he resided in the State of West Virginia until the year 1941 when he entered the United States Army. He came to Alaska in September, 1941, and has been since continuously stationed at United States military reservations in Alaska. He never has lived or resided elsewhere in Alaska. His testimony reveals that shortly after coming to Alaska, he decided to make the Territory his permanent home and that intention has firmly persevered until the present time; that on one occasion he was offered an opportunity to transfer in military service to the States but that at his own request he was continued in service in Alaska, thus firmly indicating his resolution to be and remain a permanent resident and inhabitant of the Territory.

This testimony was supported in some features by other officers and there seems no reason to doubt it. And so, if a finding of fact were to be made, I should say that for more than two years prior to the commencement of this action the plaintiff has entertained a firm, sincere and permanent intention and desire to be and remain a resident of Alaska. So far as intention is a factor of residence the plaintiff's case is proved.

But is that sufficient? After all, it is to be remembered that the family domicile of the plaintiff during all of this period has been in West Virginia. True it is, by plaintiff's testimony, that he long ago decided to sever his relations with his wife and that more than two years prior to the commencement of this action he determined to have Alaska as his permanent residence. Since the plaintiff had separated from his wife and intended to live with her no more, the general rule that the residence of the husband is ipso facto the residence of the wife can have no validity.

The question involved is not an easy one to determine. Strict logic may support the plaintiff's contention, but we have been reminded by the late Justice Oliver Wendell Holmes that, "The life of the law has not been logic: it has been experience." The Common Law, page 1.

The point is not a new one in this jurisdiction. My learned and eminent predecessor, Judge Hellenthal, gave it intense and scholarly scrutiny as well as positive decision. In Buckner v. Dufresne, 10 Alaska 121, in which the petitioner sought writ of mandate to compel issuance to him of hunting licenses as a resident of Alaska, General Buckner testified that he had expressed a desire to live in Alaska more than 40 years ago when he attempted to get his father to let him come to the Alaska "gold rushes"; that after he was graduated from West Point he placed Alaska high on his preference card where an officer is required to state where he would prefer to go for overseas service; that Alaska remained on his preference card until he was promoted to a position for which there was no vacancy in Alaska; that in May, 1940, when he was relieved of his then position as Chief of Staff of the Sixth Division and directed to proceed to Fort Lewis, Washington, he welcomed the opportunity because it might mean a more favorable chance to go to Alaska; that after he arrived in Alaska in 1940 he determined to make Alaska his permanent home and declared that intention and determination to others; that he then actually purchased some land and rented proper quarters for himself and his family in the City of Anchorage, beyond the limits of the military reservation at Fort Richardson, and actually occupied such dwelling for more than a year prior to the commencement of the action mentioned. He also pointed out that he had taken his daughter out of the University of California and she entered the University of Alaska as a student. General Buckner stated in explicit terms his firm intention to remain a permanent resident of Alaska. This testimony was supported by that of another highly reputable witness who testified as to General Buckner's declaration of becoming a.

permanent resident of Alaska shortly after he was assigned to duty in Alaska in the year 1940.

Upon that and other similar proof, Judge Hellenthal held General Buckner to be a resident of Alaska within the intent and meaning of the Alaska Game Law and thus entitled, upon payment of the fee, to a hunting license, as a resident of Alaska. It is deserving of note that although an appeal was undertaken by the defendants, that appeal was afterward dismissed by them, and it is not unreasonable to conclude that the proposed appeal from Judge Hellenthal's decision was finally considered, even by the proposed appellants, to be a hopeless undertaking, and to further conclude that his decision stands as sound law.

The subject has received equally careful attention by the Supreme Court of the Territory of Hawaii and the views of that Court are expressed in the case of West v. West, 35 Haw. 461, opinion dated June 5, 1940.

In that case the libelant West sought a divorce from his wife. The libelee, a nonresident, appeared by attorney, admitted the marriage but denied all of the other allegations of the libel. From the proof it appeared that the libelant was an enlisted man in the United States Navy; that he first enlisted in the Navy on June 5, 1924, and gave Kansas City, Missouri, as his home address; that at the expiration of that first enlistment he again enlisted and again gave Kansas City as his home; that a third enlistment followed, on which occasion he gave Salt Lake City, Utah, as his home; that while serving his third enlistment he was for a short period of time stationed at Pearl Harbor, remaining there from November, 1933, until February, 1934; that when his third enlistment had expired in August, 1936, he was stationed at Boston, Massachusetts, and applied there for reenlistment for service in Hawaii, whereupon he was advised by naval authorities at Boston that if he desired to enlist for service in Hawaii he must go to San Diego, California, or to Honolulu, Hawaii, at his own expense, in order to enlist for such service; that he did pro-

ceed to San Diego and did enlist there for service in Hawaii, and within approximately one week thereafter he was sent to Hawaii for service, arriving there September 17, 1936, and remaining there on duty continuously thereafter; that his fourth enlistment service record showed his home address to be San Diego, California, and his record remained in this condition until September 21, 1938, at which time a dispatch from the bureau of navigation authorizing a change in his home address as shown in his service record was received by his commanding officer at Pearl Harbor; that this change was made at the request of the applicant to his commanding officer and his home address was thereupon changed in his service record from San Diego, California, to 1536–C Kewalo Street, Honolulu, T. H.; that at no time subsequent to his arrival in Honolulu did he reside either on a ship or upon a naval reservation, but on the contrary resided continuously off the naval reservation in rented property in Honolulu.

Upon this state of the record the Circuit Court held that the libelant had not acquired residence in Hawaii prior to a request for a chang. in his service record in June, 1938, but the Supreme Court reversed the decision of the Circuit Court and held that the libelant had been a bona fide resident of Hawaii continuously after his arrival there under his fourth enlistment in the latter part of 1936.

While the decisions of the courts on the subject are not in harmony, most of the adjudicated cases which deal with the question hold that a soldier in active service in the Army of the United States cannot acquire a residence or domicile in the Army post or camp where he is stationed, principally because he has no free choice. West v. West, supra, 35 Haw. 461; Pendleton v. Pendleton, 1921, 109 Kan. 600, 201 P. 62; Harris v. Harris, 1927, 205 Iowa 108, 215 N.W. 661; In re Cunningham, 1904, 45 Misc. 206, 91 N.Y.S. 974; Ex parte White, D. C.N.H.1915, 228 F. 88.

Still less can a soldier acquire a residence in the state embracing the post or camp in which the soldier is stationed. Dicks v. Dicks, 1933, 177 Ga. 379, 170 S.E. 245.

■■■■■■■■■

In the case of Re Grant's Estate, 1913, 83 Misc. 257, 144 N.Y.S. 567, it was held that an officer acquired a residence and a domicile on a military reservation within the exterior boundaries of the State of New York but that he was not a resident of the state.

It must be recognized however that the relations of the states to military reservations are not entirely parallel to those of Alaska. In many, if not all, of the states the state governments and the state judicial systems have no jurisdiction over strictly military reservations, or else the state jurisdiction is fragmentary and incomplete. Military reservations in Alaska are also completely under the control of the United States Government in the same manner and to the same extent as are the military reservations in the states, but the local government of the Territory of Alaska springs from an act of Congress with none of the features of sovereignty which mark the government of a state. Moreover the District Court of Alaska is a Federal court although it exercises general local jurisdiction. It follows that if any individual could acquire a residence on a military reservation in Alaska, the District Court of Alaska would have just the same jurisdiction over the civil and criminal causes in which he might become involved as it would if the individual in question resided outside of a military reservation, except so far as purely military law might govern.

■■■ The confusion is not diminished by the use of different words for the same thing or for things so nearly similar as to be virtually indistinguishable, for example: the controlling section of our code, 3992, uses both the word "inhabitant" and the word "residence", from which it is clear that in the minds of the lawmakers "inhabitant" and "resident" were intended to be synonymous although many courts have made distinctions in their meanings. The same condition exists with respect to the word "domicile." As bearing upon the meaning of that word, in the West case we find the following:

"Section 55 of the Hawaiian Organic Act provides that 'No divorce shall be granted * * * unless the applicant

therefor shall have resided in the Territory for two years next preceding the application.' Section 4461, R.L.H. 1935, is to the same effect. The term 'residence' in section 55 of the Organic Act and section 4461 of the Revised Laws above mentioned is used in the sense of and as the equivalent of 'domicile.' The residence requirement is mandatory and jurisdictional, and a circuit judge is without authority to grant a divorce in the absence of proof of domicile for the necessary length of time. Zumwalt v. Zumwalt, 23 Haw. 376."

It is appropriate to pause for a minute to consider the word domicile because that word has been so extensively used, either as an equivalent of residence or habitation or as differing therefrom by so many courts not only in divorce actions but in other cases where the question of residence or domicile or habitation was necessarily involved. The word domicile is not used in the divorce sections of our code at all, but it was interchangeably used by the Supreme Court of Hawaii in the West case with the word residence. The irreconcilable conflict in the decisions of the courts is illustrated by the fact that in Vol. 13 Words and Phrases, Perm. Ed., under the title "Domicile," we find on pages 277 to 290 inclusive, citation of more than one hundred adjudicated cases, all of which declare that residence and domicile are not synonymous, and some of them declare that an individual may have a residence in one place and a domicile in another; while the following pages, extending from 291 to 301 inclusive, list a substantially equal number of cases in which the courts have firmly declared that residence and domicile are convertible terms and that legally the one means the same as the other. One court—perhaps others—has determined that the words "bona fide residence" are synonymous with "domicile" but that the word "residence" standing alone, is not. At any rate in this opinion the example of the Supreme Court of Hawaii will be adhered to in the assumption that residence and domicile are identical in meaning.

Both reason and experience seem to have found expression in the text of Restatement of the Law, Conflict of Laws, quoted below:

"a. A person does not acquire a domicil of choice in a place which he cannot legally leave when he chooses to do so. * * *

"c. Soldiers and sailors. A soldier or sailor, if he is ordered to a station to which he must go and live in quarters assigned to him, cannot acquire a domicil there though he lives in the assigned quarters with his family; for he must obey orders and cannot choose to go elsewhere. If, however, he is allowed to live with his family where he pleases provided it is near enough to his post to enable him to perform his duty, he can acquire a domicil where he lives.

"Illustrations: 2. A's domicil is X. As an officer in the army, A is required to live in that part of Y devoted to the purposes of an army post, his family being permitted to reside and residing there with him. A is still domiciled in X.

3. A's domicil is X. A is an army officer stationed at Y. He is permitted to live outside the army post. A marries a resident of Y, purchases a house in Y and lives there with his family with the intention of making it his home. A acquires a domicil of choice in Y."

■■ The sounder rule would therefore seem to require that change of residence must embrace (1) intention, and (2) acquisition of new domicile; and (3) that no such thing as a permanent residence, domicile or home on a military reservation is possible under the law. The only other alternative to requiring, for change of residence, not only intention but the actual establishment of the new domicile, would be to permit one to establish residence by intention only. The hazards involved in such a decision are prohibitive.

In the West case the Supreme Court of Hawaii arrived at the following conclusions:

"We think that both reason and authority support the following conclusions: (1) That an officer or enlisted man,

when permitted to establish a home outside of his military or naval station, may thus acquire a domicile but cannot acquire a domicile when required to reside in quarters furnished by the government on a military or naval station; (2) that the fact that he cannot stay in the new home, if called away to perform his duties, does not prevent his forming the animus manendi and acquiring a domicile there; (3) that the motive with which a person acquires a new dwelling place, even an unworthy one, does not determine the question of the establishment of a domicile of choice, though it may be important evidence tending to show whether or not, when the new dwelling place was acquired, it was with an intention to make a home there; (4) that a change of domicile is effected immediately upon the concurrence of the two essentials, intention on the part of the one making the change to abandon the old domicile and the establishment of a residence in another place with the intention of making it his home."

While not all will care to subscribe to every feature of the decision of the Supreme Court of Hawaii, the conclusions of that court, supported as they are by the above quoted text from Restatement, supply a sound and reasonable working rule and one in harmony with the law on the subject in this division, as established by Judge Hellenthal.

■ The order will be to dismiss the cause for want of jurisdiction, because the plaintiff has not been and is not now an inhabitant or resident of the Territory of Alaska.