# ROBERT CHARLES McHENRY *v.* FLORENCE LILLIAN McHENRY.

## No. 2586.

SUBMITTED OCTOBER 4, 1945.          DECIDED NOVEMBER 1, 1945.

KEMP, C. J., PETERS AND LE BARON, JJ.

This is an appeal by the wife from a decree granting the husband a divorce on the grounds of "cruel treatment, neglect and personal indignities" and "desertion" for the statutory period.

The original libel, filed November 24, 1943, was grounded solely on cruel treatment, neglect and personal indignities, alleged in the words of the statute. On March 13, 1944, the motion of the libelee for a bill of particulars was granted and the libelant in response thereto on March 28, 1944, filed an amended libel setting forth in detail the particulars of the alleged cruel treatment, neglect and personal indignities relied upon, and added a so-called second count alleging, "That in June 1943 libellant (*sic*) wilfully and utterly deserted libellant, without cause or justification, and said desertion on the part of libellee continued for over six months prior to the filing of the Libel for Divorce herein."

On March 31, 1944, the libelee answered the libel and amended libel by general denial.

Thereafter, on April 10, 1944, a commission was issued to take the deposition of the libelee (wife) in Buffalo, New York, where she was residing, and her deposition was taken on June 15, 1944. The libelant (husband) testified before the circuit judge, and as to both grounds there are sharp conflicts in the evidence.

The appellant has specified as error the following:

1. The finding that libelant had resided in the Territory of Hawaii for two years next preceding his application for divorce;

2. The finding that libelant had resided in the first circuit for three months next preceding his application for divorce;

3. The finding that the libelee has been guilty of cruel treatment, neglect and personal indignities toward libelant;

4. The finding that libelant (*sic*) deserted libelant for six months.

The specified errors will be considered in the same order.

The following evidence bearing on the issue of the residence of libelant is uncontroverted:

The libelant while domiciled in Oklahoma enlisted in the United States Navy in August 1939 and was assigned to Hawaii, where he arrived in November 1939. He was permitted to live off the naval reservation, and in July 1940 he rented an apartment in Kaimuki, Honolulu, Oahu, within the first judicial circuit, and lived there until July 1941. He was then transferred to the naval air station on the island of Maui where he stayed until March 1942. He was then transferred to the island of Midway where he stayed until December 1942. He was then transferred to Pearl Harbor. He continued his stay at Pearl Harbor until February 1943. While serving on Maui, Midway, and at Pearl Harbor, he was required to reside on the Government reservations. From Pearl Harbor he was transferred to Chicago, Illinois, to go to school. On April 28, 1943, while attending school, he married the libelee. In July 1943 he finished his schooling and was sent back to Pearl Harbor, where he again was required to reside on the Government reservation up to the time of the commencement of his action for divorce.

The parties both testified to other facts bearing on the issue of residence.

The libelant testified that in July 1940 he made up his mind to make Hawaii his home; that he planned to get out of the Navy when the war was over and start a flying service on Oahu to teach students how to fly.

The libelee testified that libelant told her that when he got out of the service he expected to start either a farm or a gas station in Oklahoma around Blackwell.

It is well-established that the provision of our statute and the Organic Act which prohibits the granting of a divorce by the courts of the Territory, unless the applicant therefor has resided in the Territory for two years next preceding the application, is jurisdictional and requires that the applicant shall have been domiciled in the Territory for that period of time. (*Zumwalt* v. *Zumwalt*, 23 Haw. 376; *West* v. *West*, 35 Haw. 461.)

The essentials upon which the conclusion of a change of domicile must rest are an intention to abandon the old domicile and to acquire a new one in another place where a residence has been established. The intention required for the acquisition of a domicile of choice is an intention to make a home in fact, and not an intention to acquire a domicile. (*West* v. *West, supra,* and authorities cited.)

The foregoing applies to a soldier who is permitted to live where he pleases outside the post, and if a new dwelling place is acquired, with the necessary intention of making it a home, it becomes a domicile of choice and it is elementary that a domicile once acquired remains a domicile until a new one is acquired even though his military assignments require him to go and reside elsewhere temporarily.

The only conflict in the evidence on the issue of domicile relates to the intention of libelant when in 1940 he established his residence outside of the post where he was stationed. He testified that he had made up his mind to make Honolulu his home, and carried out that intention by renting a house in the city and living in it for about one year, when his military assignment called him elsewhere. The only evidence tending to contradict his statement of his intention is the testimony of the libelee to the effect that he told her that he intended to return to Oklahoma when he got out of the service.

There being substantial evidence to support the finding of domicile the finding will not be disturbed.

The question of whether or not the evidence is sufficient to establish either of the grounds for divorce (assuming that two grounds were properly presented by the pleadings) is the only other question presented by the appeal.

We think the evidence, though conflicting, is sufficient to support a finding that on about June 15, 1943, the libelee without just cause deserted the libelant and refused to return when requested to do so. However, the events which have transpired present a question of law upon which there is a diversity of opinion.

On November 24, 1943, the libelant filed his original libel herein charging the libelee with cruel treatment, neglect and personal indignities as ground for divorce. At that time the six-months' period required for desertion to ripen into a cause of action had not elapsed, and the question is, did the filing of the original libel within the six-months' period prevent the desertion from ripening into the cause of action set up in the amended libel filed more than six months after the libelee is alleged to have deserted the libelant?

In *Nishioka* v. *Nishioka*, 30 Haw. 595, the wife returned from a short visit to Japan on January 8, 1926, and then refused to resume marital relations with her husband and thereafter persisted in that refusal. On February 1, 1926, she filed suit for divorce alleging nonsupport. On June 24, 1926, a decree was entered dismissing her libel. On December 14, 1926, the husband filed his libel for divorce on the ground of desertion. The husband's suit was held to be premature because six months had not elapsed after the decree dismissing the wife's libel.

In discussing the question of whether or not the period of the pendency of the wife's libel for divorce could be considered a part of the period of desertion, the court

said: "While there are authorities to the contrary the weight of authority seems to me to be that the general rule is that during the pendency of a divorce suit the parties are in the eyes of the law justified in living separate from each other. Their rights are under investigation by the court and neither should be prejudiced by compulsory cohabitation during that time. To require a wife to continue to cohabit with her husband after she brings a suit for divorce alleging that her husband is guilty of some marital offense or delinquency would be to place her in a disadvantageous position in so far as the credibility of her testimony is concerned. The judge conducting the trial may well feel that a wife's story of the husband's adultery or cruelty or nonsupport or desertion is exaggerated or untrue when he finds the libelant continuing to live with the libelee in all respects as his wife. So, also, her cohabitation with him after the institution of the suit may amount to condonation and deprive her of any pre-existing right to a divorce. In so far as the right to live apart is concerned it seems to me to be immaterial whether the suit be brought by the wife or brought by the husband. Like other rules, this one has its limitations. It does not apply, for example, when the suit for divorce is brought in bad faith. Upon reason it is obvious that such a proceeding ought not to render justifiable a separation otherwise not justifiable."

The opinion of Chief Justice Perry in the *Nishioka* case was rendered in 1928, and so far its soundness has not been questioned except by the dissenting opinion of Mr. Justice Parsons. Although the treatment by the chief justice of the opinion in *Wagner* v. *Wagner*, 39 Minn. 394, and other cases to the same effect, was criticised by Mr. Justice Banks in his concurring opinion, he concurred in the conclusion reached by the chief justice. The chief justice cited ample authority for his conclusion and at

the same time recognized the existence of a conflict in the authorities. Litigants in Hawaii were put on notice by that opinion of the attitude of this court on the question here involved, and we are not inclined to overrule a case of such long standing unless it is in our opinion clearly wrong. Accordingly, we hold that the libelant cannot include the time since the filing of his original libel in the period of desertion. His suit on the ground of desertion was therefore premature and cannot be maintained.

As to the issue raised by the specification of error to the effect that the court erred in finding that the libelee was guilty of cruel treatment, neglect and personal indignities, we might very well refuse to consider that issue for the failure of the libelee-appellant to comply with rule 3 (e) of the rules of this court. But paragraph 6 of rule 3 provides that for default in compliance with the foregoing and other provisions of rule 3 the case "may" be dismissed. The rule is not mandatory, and in view of the fact that the stability of the marital status is so important to the welfare of society that it has been placed under the control of special municipal regulations, independent of the will of the parties, we have decided to not impose the penalty for failure to comply with the rule.

On examination, the evidence bearing on the issue of cruel treatment, neglect and personal indignities, utterly fails to disclose any acts of the libelee which could be termed either cruel treatment or personal indignities. The most that can be said of the evidence is that it is sufficient to support a finding of some neglect, but fails utterly to show that it rendered "the life of the other burdensome and intolerable and their further living together insupportable," as required by the statute. Even the evidence given by the libelant negatives such a conclusion, for he testified that after his wife deserted him he unsuccessfully endeavored to induce her to return to him and

resume marital relations. If her conduct had been such as to render his life burdensome and intolerable and their further living together insupportable, he certainly would not have tried to induce her to return but would have been content to leave her where she was.

The decree appealed from is reversed and the cause remanded for further proceedings consistent herewith.

*R. T. Yamaguchi,* for libelant-appellee.

*B. Houston,* for libelee-appellant.

