JOHN M. KLEIN *v.* GENEVIEVE S. KLEIN.

No. 3021.

ARGUED NOVEMBER 21, 1958.     DECIDED JULY 21, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY RICE, C. J.

This is an appeal from the decree of a circuit judge at chambers, in the first circuit, Territory of Hawaii, dismissing the libel for divorce filed by the libellant-appellant, hereinafter referred to as the "libellant," against the libellee-appellee, hereinafter referred to as the "libellee," in divorce number 41222.

The libellant sought a divorce from his wife, the libellee, on the grounds stated as follows:

"V

"That libellee has been guilty of inflicting such grievous mental suffering upon the libellant, continued over a course of not

less than sixty days immediately prior to separation of the parties hereto, as to render the life of the libellant burdensome and intolerable, and the further living together of libellant and libellee insupportable."

The libellee was and still is a resident of New York. The parties separated in New York by virtue of a separation agreement in May of 1949, which followed the institution of separation proceedings by the libellee against the libellant on January 31, 1949.

Upon motion on behalf of libellant to perpetuate his testimony on the ground that he would be leaving for the mainland on June 8, 1953, and the assumption that in the event of no contest the evidence submitted would be sufficient to support the libel for divorce, the libellant testified on June 5, 1953, before the Honorable Carrick H. Buck, then First Judge of the circuit court, first circuit, Territory of Hawaii, presiding. At that time it was stated by the then attorney for libellant that it was his understanding, in connection with the motion, that if the case should be contested then, of course, the libellee would be entitled to cross-examination of the witness and he would then be recalled at the time of the trial of the matter. Accordingly, John M. Klein, libellant, was sworn and gave testimony on direct examination by his attorney and examination by the court. The court ordered the testimony reduced to writing and filed in the record in the usual manner.

On June 30, 1953, a written entry of appearance of counsel for libellee was filed.

On September 17, 1953, a motion for a bill of particulars was filed by her counsel on behalf of libellee.

The motion for bill of particulars coming on for hearing on September 23, 1953, before the Honorable Albert M. Felix, Third Judge, circuit court, first circuit, Territory of Hawaii, presiding, counsel for libellee, after perusing the testimony of the libellant which had been perpetuated, did not insist upon a bill of particulars and stated that he understood that he would be permitted to cross-examine the libellant. The court confirmed such understanding. Thereupon, counsel for libellee requested that the court reporter supply him with a copy of the deposition and it was so ordered.

On September 24, 1953, there was filed on behalf of libellee a motion for order to show cause directed to the libellant to show cause, if any he had, why he should not be required to pay the libellee a reasonable sum as and for attorneys' fees, and a sufficient sum for traveling expenses from the city of New York, New York, to Honolulu, T. H., to permit libellee to attend upon the trial of the cause.

The motion last aforesaid came on for hearing before the circuit judge, presiding in divorce, on September 30 and again on October 1, 1953, counsel for the respective parties being present on both occasions.

On October 1, 1953, an answer, of general denial, was filed on behalf of libellee and the court informed of such fact.

Counsel for the respective and adverse parties being unwilling to stipulate as to certain facts, the libellant resumed the witness stand for further examination by his counsel and the court. The court announced that it was then, at that stage, interested only in whether libellee was destitute and unable to pay her own transportation here (to Honolulu) to defend herself, and that, as counsel for libellant refused to stipulate to facts set forth in libellee's affidavit, the court had no alternative but to ask counsel to get a deposition solely on the question of destitution. The circuit judge further stated that if libellee was destitute and therefore unable to defend herself in the suit, then she would be entitled to expenses to come to Hawaii; however, if she were not destitute she would have to pay her own way and cited section 12224, Revised Laws of Hawaii 1945. Thereupon counsel for libellee offered to prepare the motion and order for deposition.

The matter again coming on for hearing on February 11, 1954, before the Honorable Albert M. Felix, Third Judge, presiding, and counsel for the respective and adverse parties being present, counsel for the libellant stated that libellee's deposition had been received and asked for a date for hearing. Counsel for the libellee opposed the request and stated that there had to first be a ruling on the motion for attorneys' fees and the question of travel expenses for libellee. The court took the matter under advisement for future ruling.

On April 7, 1954, the motion for attorneys' fees and traveling expenses, as *supra,* again came on for hearing before the Third Judge, presiding. Thereat the court found that the libellee was not in destitute circumstances, but deferred the question of whether the libellee would be entitled to attorneys' fees to be determined upon the final disposition of the matter. Libellee's motion was overruled.

Counsel for libellant then informed the court that he was willing to put the libellant back on the stand for further testimony before the taking of further testimony of the libellee by deposition.

On April 26, 1954, the matter came on again before the same judge aforementioned, with counsel for the respective and adverse parties present. The libellant was duly sworn and testified on direct examination by his counsel, giving further testimony in view of the fact that the matter had developed into a contest. Counsel for libellee objected to the taking of such further testimony. However, the court stated that the testimony would be perpetuated and counsel for libellee would have an opportunity to get a deposition and an answer to all of the new charges; and, in addition, would have the opportunity to cross-examine the libellant after checking with libellee. Thereafter counsel for libellee cross-examined the libellant. The court later continued the matter for further hearing on May 4, 1954.

On May 4, 1954, the matter having come on for further hearing and the libellant having testified further on direct and on cross-examination, at the conclusion of the testimony of the libellant, counsel for libellee moved for dismissal of the libel for the reason that the libellant had failed to prove utterly that the further living together was insupportable up to and including May 25, 1949, at which time the parties entered into an agreement, of separation.

It appears from the testimony of the libellant that he and the libellee were married in Greeley, Colorado, on August 21, 1937; that two children were born of the marriage, James Vincent Klein, born August 3, 1944, and John F. Klein, born October 9, 1947; that the parties moved from Colorado to and subsequently resided in New York City, New York.

It further appears, that since their separation in May of 1949 the parties have not lived together as husband and wife and since

1950 the libellant has made Hawaii his home and has been employed in Honolulu.

The only testimony which was before the circuit judge, presiding at chambers in the divorce proceeding, was the testimony of the libellant, which, in addition to that as to date and place of marriage, their children and their places of residence, as stated *supra,* was in substance as hereinafter recited.

In New York the libellant was a full-time employee of the Y. M. C. A. in Brooklyn and, in addition, to supplement his income, was also an instructor at New York University in anatomy, psychology and biology and in summer taught at the College of the City of New York; that holding so many positions to supplement his income overtaxed his strength; that, as a consequence, in May 1942, he developed tuberculosis and for 18 months thereafter, 1942 to November, 1943, was confined in Bellevue Hospital. Until he was confined in the hospital with tuberculosis, the parties were very happily married and "got along fine up until that time." However, while he was in Bellevue Hospital, his wife had purchased a home next door to her mother and her brother and his wife lived in the house. His wife, libellee, insisted on working instead of remaining at home to care for their baby. He, libellant, detailed several actions upon the part of his wife from which he said he found his wife's affections had changed and she was never again the same.

Prior to his going into the hospital, the money which he, libellant, and she, libellee, had in the bank consisted of "only a couple of hundred dollars," and from such fact it would appear that to obtain a home it was necessary for the wife, libellee, to obtain financial assistance from her family.

Libellant further stated that his wife left him on January 29, 1949; that two days later, on January 31, she filed a separation proceeding against him; that on March 29, 1949, he filed an opposing affidavit in answer to the separation suit and that by reason of a separation agreement entered into by the parties and dated May 25, 1949, the separation suit was dismissed and the parties agreed to live separate and apart.

Libellant testified that in his answer to his wife's complaint, dated March 29, 1949, he had stated that he wanted his wife to

come back and urged her to come back and that his desire to have her come back referred to that date and that in said answer he contended that anything that he might have done, about which his wife was complaining in her suit, was condoned by the wife by their living together, as they had gone to Buffalo and while there from November 30 to December 4, 1948 had marital relations with each other. The wife left him on January 29, 1949; after her departure the libellant in good faith requested and urged his wife to return home, but as a result of the separation suit and the written agreement dated May 25, 1949, the parties have since lived separate and apart, although as of the date of the agreement libellant was still willing to have his wife, libellee, come back.

During the course of the examination of the libellant as a witness on his own behalf, the following ensued.

"THE COURT: Is it true that you did not go back to live with your wife after May 25th, 1949, because of an agreement with your wife that you would live separate and apart?

"WITNESS: Yes.

"MR. LANDAU: But up to that time you were hoping—at least you so testified—On March 29th you were willing to take your wife back, were you not?

"WITNESS: I wanted to, yes—to preserve the home.

"THE COURT: You were willing to take your wife back up to May 25, 1949. This written agreement, this agreement to live separate and apart was entered into between you and your wife on May 25th, 1949, is that correct?

"WITNESS: That is correct.

"THE COURT: Now, the Court asked you if after May 25th, 1949, you did not live with your wife because of this agreement that you had entered into with her.

"WITNESS: After May 25th?

"THE COURT: Mr. Landau asked you this question—that up to that date, May 25, 1949—prior to that date, you were willing to go back to her, and you made efforts to get her back.

"WITNESS: No, sir. I made no efforts to get her back. I still loved her. I loved the gal and I had my children, and I

didn't see them January to May, and I was willing to do anything.

"THE COURT: And you were willing that she come back and live with you up until May, 1949.

"WITNESS: Not just up until May. I was willing to live with her forever.

"THE COURT: But you were willing to take her back—that she come back and live with you from the date of separation, January 29th, 1949, up to May 25th, 1949? During that period, you were willing that she come back and live with you?

"WITNESS: Yes, sir."

Counsel for the respective and adverse parties having been given opportunity to do so and having severally filed briefs in the trial court, on June 30, 1954, there was entered and filed in the trial court a decision, dated June 29, 1954, signed by the trial judge, finding that the libel was not sustained by sufficient and competent evidence and denying the libel.

Pursuant to the decision a decree was entered and filed on September 20, 1954, whereby it was ordered, adjudged and decreed:

"1. That the libellant has failed to sustain the allegations for the libel for Divorce and;

"2. That in accordance with the Decision heretofore filed, the Libel for Divorce is hereby dismissed."

It is from that decree that the libellant has appealed.

Libellant relies upon three alleged errors of the court below, but we find only the first two material to the disposition of the appeal and they are stated by the libellant to be as follows:

"1. The court below erred in dismissing the libel for divorce.

"2. The court below erred in holding that libellant's willingness to take his wife back again barred the granting to him of a divorce since there was no question that libellant had established ample grounds for divorce."

It is the view of this court that the two above-quoted assignments of error must be considered together, as the first is merely

a bald statement and the second purports to present the grounds for the first. Treating them accordingly, consideration is given to whether the "libellant had established ample grounds for divorce"; whether the "court below erred in holding that the libellant's willingness to take his wife back again barred the granting to him of a divorce"; and whether the "court below erred in dismissing the libel for divorce."

In his decision, dated June 29 and filed June 30, 1954, Judge Felix, the trial judge, said what we quote hereinafter.

"The Libellant testified that up to May 25, 1949, at which time the parties agreed to live separate and apart, he was willing to take her back. He also stated that prior to and up to the time he came to Hawaii he often asked her to come back to live with him because he loved her very much. There is no evidence that she committed any act subsequent to his coming to Hawaii that caused him grievous mental suffering. Whatever acts she committed, which allegedly caused him grievous mental suffering and still causes him grievous mental suffering, are acts allegedly done by her prior to his coming to Hawaii and prior to his asking her to come back to him and his willingness to take her back.

"The statute defining grievous mental suffering is as follows:

" 'When one party to the marriage, whether intentionally, studiedly, wilfully, deliberately, or not, inflicts grievous mental suffering upon the other, continued over a course of not less than sixty days, as to render the life of the other burdensome and intolerable and further living together insupportable.' (Section 12210 (8), R. L. H. 1945, as amended by S. L. H. 1949, Sr. D-281, A 174 [now Section 324-20 (h), R. L. H. 1955.]

"If her actions rendered his life burdensome and intolerable and further living with her insupportable, he certainly would not have asked her to return to him and he certainly would not have been willing to live with her.

"This Court finds that the evidence fails to show that the actions of the Libellee rendered 'the life of the other burden-

some and intolerable and their further living together insupportable,' as required by our statute.

"As stated by our Supreme Court in the case of McHenry vs. McHenry in 37 Haw. 223 on p. 229.

" '. . . Even the evidence given by the libellant negatives such a conclusion, for he testified that after his wife deserted him he unsuccessfully endeavored to induce her to return to him and resume marital relations. If her conduct had been such as to render his life burdensome and intolerable and further living together insupportable he certainly would not have tried to induce her to return but would have been content to leave her where she was.'

"This Court finds that the Libel is not sustained by sufficient and competent evidence and the Libel is denied."

When testifying, the libellant admitted, on cross-examination, that he and his wife did not live together again after May 25, 1949, because of an agreement between them that they would live separate and apart and that from the date of their separation, January 29, 1949, up to May 25, 1949, he was willing that libellee come back and live with him. (See portion of his examination quoted *supra.*)

As mentioned *supra,* libellant had also testified that in his answer to his wife's complaint, dated March 29, 1949, in the separation proceeding against him in New York, he contended that anything he might have done, about which his wife was complaining in her suit, was condoned by his wife by their living together as they had gone to Buffalo, New York and while there from November 30 to December 4, 1948, had marital relations with each other. We might well apply the adage, "What's sauce for the goose is sauce for the gander." If their living together at Buffalo was condonation by libellee of anything libellant may have done which could give her cause for complaint, it would likewise be condonation by him of causes for complaint given by her to him.

Applicable to the divorce proceeding herein was the then statutory provision (Section 12215, R. L. H. 1945, now Section 324-25, R. L. H. 1955) that, "Upon the hearing of every libel for divorce

the judge shall require exact legal proof upon every point, * * *."

To sustain his action for divorce on the ground he relied upon, libellant herein was by the applicable above-quoted statutory provision required to present exact legal proof of these points:

(1) That the libellee had inflicted grievous mental suffering upon him;

(2) Which continued over a course of not less than sixty days; and

(3) Which rendered the life of the libellant burdensome and intolerable and further living together (with libellee) insupportable.

If, as contended on behalf of the libellant, the conduct of libellee towards him prior to November 30, 1948, as detailed in his testimony, constituted infliction upon him of grievous mental suffering, nevertheless, his testimony that he and she had cohabited and had marital relations with each other in Buffalo, during the period from November 30 to December 4, 1948, and his further testimony that after she left him on January 29, 1949, and through May 25, 1949, he was willing to have her return to him, in effect disproved—and negated "exact legal proof"—that her conduct rendered his life burdensome and intolerable and their further living together insupportable. He, libellant, could not predicate his action for divorce upon any conduct of libellee between December 4, 1948, and the date when she left him, January 29, 1949, as that was a period of less than the statutory minimum requisite of sixty days.

After due consideration thereof, it is the conclusion of this court that the libellant has failed to sustain his assignments and allegations of error on the part of the court below; that libellant's testimony failed to sustain the allegations of his libel for divorce and the libel was properly dismissed.

Affirmed.

*John E. Parks* for appellant.
*Samuel Landau* for appellee.